**LONE STAR DODGE, INC., Relator,**

v.

**The Honorable John McClellan MARSHALL, Judge, 14th Judicial District Court, Dallas County, Texas, Respondent.**

**No. 05–87–00158–CV.**

Court of Appeals of Texas, Dallas.

Aug. 14, 1987.

Rehearing Denied Aug. 31, 1987.

M. Leigh Bartlett, Robert D. Allen, Bryan T. Pope, Dallas, for relator.

Robert H. Osburn, Joe A. Byrom, Julie C. Reedy, Dallas, for respondent.

Before DEVANY, STEWART and ROWE, JJ.

DEVANY, Justice.

Lone Star Dodge, Inc., filed its petition for writ of mandamus in this court, seeking relief from an order by the trial judge granting discovery of numerous documents which Lone Star contends are privileged. The documents in question from the underlying lawsuit concern the investigation of a severe automobile accident which occurred on March 16, 1986, between cars driven by an employee of Lone Star and Timothy Lee Griffin. Mr. Griffin's pregnant wife and their minor child were passengers in Griffin's car. The trial court ordered that a number of documents from the file of Lone Star's insurance carrier and from the files of Lone Star's attorneys were discoverable. Lone Star contends that the documents were privileged under TEX.R.CIV.P. 166b(3)(d), the agent-representative-employee communication exemption, and under TEX.R.CIV.P. 166b(3)(a), the attorney work product exemption, as well as under TEX. R.CIV.P. 166b(3)(b), which exempts statements of potential witnesses. Therefore,

Lone Star contends that the trial judge's action was an abuse of discretion. Because we agree with Lone Star's contentions, we conditionally grant the writ.

The underlying facts, and pertinent dates, of the suit between Griffin and Lone Star are as follows: On March 16, 1986, John Clifford Brinkley, an employee of Lone Star, was driving a Lone Star demonstrator vehicle when he collided with Griffin's automobile. Both Griffin and his wife sustained personal injuries in the accident, and their minor child was killed. As a result of the accident, Brinkley was arrested for driving while intoxicated and for involuntary manslaughter. The Griffins later sued Lone Star for negligent entrustment, claiming that Lone Star is vicariously liable, or jointly and severally liable, to them for their injuries.

Because the accident was so severe, Roger Lee Rickard, the Vice President of Lone Star, was informed of the accident on the very evening that it occurred. The next morning, March 17, 1986, Rickard met with the President of Lone Star, E.D. McLendon, Sr., and the two contacted Lone Star's corporate attorney, seeking legal advice with respect to the accident and the lawsuit they allegedly anticipated.

On March 18, 1986, Jeffrey L. Leiter, a Senior Claims Representative of Lone Star's insurer, United States Fire Insurance Company ("U.S. Fire"),[1] was informed of the accident by an agent. On March 19, 1986, Mr. Leiter visited Lone Star's offices and discussed the accident with Rickard and McLendon. After this meeting, Leiter conducted his own investigation into the facts and circumstances of the accident. Acting on behalf of U.S. Fire, Leiter determined that Lone Star should not wait until a lawsuit was filed before obtaining litigation counsel in this matter. On March 24, 1986, Lone Star was informed that the firm of Vial, Hamilton, Koch and Knox had been retained through their liability carrier to represent Lone Star in any claim or lawsuit

---

1. The record refers to both U.S. Fire and United States Insurance Group (USIG) as Lone Star's Insurance Company.

filed against it arising from the March 16, 1986 accident.

On April 7, before the Griffins retained an attorney, Mr. Leiter of U.S. Fire met with the Griffins, who inquired about possible settlement of their claim. At that meeting, Mr. Leiter agreed to pay certain medical and funeral expenses and arranged nursing care for Mrs. Griffin. Sometime after April 7, the Griffins retained Robert H. Osburn as their attorney. On April 11, 1986, Mr. Osburn contacted Leiter and discussed the prospects of the Griffins filing a lawsuit against Lone Star. On April 18, 1986, the Griffins filed suit against Lone Star.

On July 10, 1986, the Griffins served Lone Star with their request for production, seeking discovery of twenty-seven categories of documents. Lone Star produced a number of documents but objected to several requests, contending that the documents were privileged. The Griffins filed a motion for sanctions. Lone Star responded and the court held a hearing on the motion for sanctions, which it denied, but ordered Lone Star to comply, in part, with the request for production. Lone Star filed a motion for rehearing and a motion for protective order. Lone Star also offered to produce the documents in question for an *in camera* inspection. The Griffins responded with a second motion for sanctions.

The trial court held another hearing based on these motions. In that hearing, the judge indicated that he would allow discovery of all documents accumulated before the filing of the Griffin's original petition on April 18, 1986, with the exception of the attorney's files, which would be privileged in their entirety. The court then reviewed the documents *in camera* and issued an order dated January 16, 1987. Lone Star seeks relief from the January 16 order.

This court does not have the actual documents before it; however, we do have a summary description of each of the document groups. The trial judge held that some of the documents, and some parts of some of the documents, were discoverable.

In order to properly discuss the documents, we will discuss them according to the privilege Lone Star claimed with respect to each document.

Lone Star contends that some of the documents which were ordered partially discoverable were exempt from discovery under TEX.R.CIV.P. 166b(3)(d). Rule 166b(3)(d) states that the following matters are not discoverable:

> with the exception of discoverable communications prepared by or for experts, any communication passing between agents or representatives or the employees of any party to the action or communications between any party and his agents, representatives or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen....

Lone Star contends that the trial judge abused his discretion in holding that parts of the following documents are discoverable and not privileged under 166b(3)(d):

Envelope No. 1: U.S. Insurance Group (USIG) claim file up until the time USIG representative Jeff Leiter met with E.D. McLendon and Roger Rickard of Lone Star Dodge on the morning of March 19, 1986.

Source: USIG Claim File

Date: 3/18/86 through 3/19/86.

Envelope No. 2: Notes from Jeff Leiter of USIG regarding his conversation with E.D. McLendon and Roger Rickard of Lone Star Dodge.

Source: USIG Claim File

Date: Taken 3/19/86.

Envelope No. 3: Richard Rembert [passenger in the Lone Star vehicle which was in the accident] personnel file and police reports.

Source: USIG Claim File

Date: Obtained by Jeff Leiter (USIG) on 3/19/86 at meeting with E.D. McLendon and Roger Rickard of Lone Star Dodge.

Envelope No. 4: USIG investigation obtained or produced after having met with E.D. McLendon and Roger Rickard of Lone Star Dodge on March 19, 1986 and before retention of defense counsel Vial, Hamilton, Koch and Knox (VHKK), for Lone Star Dodge on March 24, 1986.

Source: USIG Claim File

Date: 3/19/86 through 3/24/86

Envelope No. 7: Notes by Jeff Leiter (USIG) made at and referring to initial and follow-up contacts with defense counsel for Lone Star Dodge (VHKK) who were retained on March 24, 1986, and other documents obtained or produced after the retention of VHKK, up until suit was filed on April 18, 1986.

Source: USIG Claim File

Date: 3/24/86 through 4/17/86

Envelope No. 10: Plaintiff's medical and funeral bills.

Source: USIG Claim File

Date: Obtained from 3/21/86 through 4/18/86

Envelope No. 11: USIG automated claims service computer entries regarding primary policy.

Source: USIG Claim File

Date: Initial entry occurred on 3/19/86 after Jeff Leiter of USIG met with E.D. McLendon and Roger Rickard of Lone Star Dodge and includes entries up until VHKK retained as defense counsel for Lone Star on 3/24/86.

Envelope No. 12: USIG automated claims system computer entries regarding primary policy.

Source: USIG Claim File

Date: Entries made from time VHKK retained as defense counsel for Lone Star Dodge on 3/24/86 up until the time suit was filed on 4/18/86

Envelope No. 16: Lone Star Dodge post accident investigation.

Source: Lone Star Dodge post accident investigation file.

Date: a) Newspaper clipping obtained 3/18/86

b) Notes made 3/21/86 through 3/24/86

c) Police report obtained 3/17/86

d) Indiana driving record obtained approximately 4/5/86, after VHKK retained as defense counsel for Lone Star Dodge on 3/24/86

Envelope No. 17: Driving records and accident reports on John Clifford Brinkley.

Source: Lone Star Dodge investigative file and USIG claim file.

Date: a) Police report obtained 3/17/86 by Lone Star Dodge

b) Indiana driving record obtained by Lone Star Dodge on approximately 4/5/86, after VHKK retained as defense counsel for Lone Star Dodge on 3/24/86

c) Texas driving record obtained by USIG on approximately 4/1/86.

Lone Star also contends that some of the contents of Envelope No. 2 and Envelope No. 7 are privileged as the written statements of potential witnesses and parties under TEX.R.CIV.P. 166b(3)(b). Additionally, Lone Star contends that the contents of Envelope No. 16 and No. 17 are privileged as an attorney work product under 166b(3)(a) and under the attorney-client privilege, Texas Rules of Evidence 503.

Other documents covered by the discovery order include those which Lone Star contends are exempt from discovery because they are the work product of an attorney. Apparently, the trial judge did order partial discovery of the attorney files despite his oral statement in the record that they were privileged in their entirety. Those documents include:

Envelopes No. 15a and 15b: Vial, Hamilton, Koch & Knox defense file.

Source: Vial, Hamilton, Koch & Knox defense file.

Date: After VHKK retained as defense counsel for Lone Star Dodge on 3/24/86 up until 4/17/86.

Lone Star also contends that these documents are privileged under Rule 166b(3)(d), 166b(3)(b), and under Texas Rule of Evidence 503 and the attorney-client privilege.

First, we will address the documents which Lone Star contends are exempt from discovery under 166b(3)(d). As

stated earlier, that rule exempts from discovery the post-accident communications of an agent, representative, or employee "made in connection with the prosecution, investigation, or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen." TEX.R.CIV.P. 166b(3)(d). The Texas Supreme Court has held that a party asserting the privilege afforded by 166b(3)(d) must show the following:

> (1) the material sought to be discovered is ... a written communication between agents, representatives, or employees of either party to the suit, or ... written communications between any party and his agents, representatives, or their employees; (2) the statement or communication is made subsequent to the occurrence or transaction upon which the suit is based; and (3) the statement or communication is made in connection with the prosecution, investigation, or defense of the particular suit or in connection with the investigation of the particular circumstances out of which it arose.

*Allen v. Humphreys*, 559 S.W.2d 798, 802 (Tex.1977). The documents in question are written communications between Lone Star and its agents, representatives, or employees, or written communications between its agents, representatives, or employees; therefore, the first criterion of *Allen* is satisfied. Most of the documents in question were generated after March 16, 1986, the date of the accident, and thus also satisfy the second *Allen* criterion.

The first question remaining, therefore, is whether these documents are "made in connection with the investigation of the particular circumstances out of which [the suit] arose." *Allen*, 559 S.W.2d at 802. Clearly, most of the documents in question were generated by Lone Star's own investigation, by its communications with USIG, and by USIG's investigation, all concerning the accident which resulted in this lawsuit. The second question is, when does the privilege begin? By allowing discovery of many of the materials developed before April 18, 1986, the trial court apparently held that the privilege under 166b(3)(d) began when the lawsuit was filed.

We are persuaded that the privilege began before the suit was actually filed. Although a claim or suit had not yet been filed at the time of the investigation, the privilege extends to investigations conducted when one has "good cause to believe" a suit will be filed. *Allen*, 559 S.W.2d at 803. Of course, the mere fact that an accident has occurred is not enough to clothe all post-accident investigations with a privilege. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801, 802 (Tex.1987). Whether there is good cause to believe a lawsuit will be filed "necessarily depends upon the facts of the particular case and must be decided using objective standards." *Cherokee Steel Fabricators, Inc., v. Khoury*, 733 S.W.2d 563, 565 (Tex.App. —Tyler 1987) (orig. proceeding).

In *Cherokee*, the Tyler Court of Appeals held that a trial court had abused its discretion when it allowed discovery of accident reports and witness statements prepared by Cherokee's insurance carrier in connection with a severe accident on January 6, 1986, between a Cherokee trailer truck and two pickup trucks. Three passengers in the pickup trucks were killed when a huge piece of steel fell off of the Cherokee trailer. Two days after the accident, Cherokee notified its insurance carrier. The claims supervisor for the insurance company immediately ordered an investigation of the accident. She also employed a consulting engineer to reconstruct the accident. The investigation report was submitted on February 11, 1986, and the consulting engineer's report was dated February 26, 1986. On February 18, 1986, suit was filed. The plaintiffs sought discovery of the investigation report, of statements of witnesses taken by the investigator, and of the findings of the consulting expert. Cherokee filed a motion for protective order, with supporting affidavits. The trial court denied the motion for protective order and allowed discovery of the documents in question. On a writ of mandamus, the Tyler Court of Appeals held that the trial court had abused its discretion. With respect to the investigative report, the court held that Cherokee had met its burden of showing

that good cause existed to believe a lawsuit would be filed when the report was prepared. *Cherokee,* at 565. The court listed several facts asserted in Cherokee's affidavits to support their assertion that good cause existed to believe a suit would be filed: (1) it was not standard operating procedure for an insurance carrier to order an on-the-spot investigation; (2) the assertion by the claims supervisor that the investigation was not conducted for any purpose other than to prepare a defense for the upcoming litigation; and (3) the extraordinary circumstances of the accident; (4) its severe consequences (three fatalities); (5) the fact that Cherokee employees had loaded the truck shortly before the accident occurred; (6) the insurance claims supervisor's experience; and (7) the fact that Cherokee did not have sole access to the accident site, so that the evidence was not "fresh evidence" only available to them. *Cherokee,* at 565–566.

■ Similar factors are present in the instant case. The accident was severe: both the husband and the pregnant wife were injured, and a minor child was killed. The car was a Lone Star Dodge demonstrator automobile, and was driven by a Lone Star employee. The employee was intoxicated at the time of the accident. The affidavit of Roger Lee Rickard, the Vice President of Lone Star, indicates that all of these facts were known by himself and by the President, E.D. McLendon, as of March 17, 1986, just one day after the accident. Rickard's affidavit also stated that at that time he had good cause to believe a lawsuit would be forthcoming. The frequent meetings which occurred during this period indicate that the officers of Lone Star knew that they were faced with a very serious problem. The affidavit of Jeff Leiter, the insurance adjuster for Lone Star, states that on March 19, 1986, when he met with Rickard and McLendon, and learned the details of the accident, he had good cause to believe that a lawsuit would be filed, based on his knowledge and experience as a senior claims representative. Furthermore, after Leiter conducted his own investigation of the facts, he concluded that Lone Star should not wait until after suit

was filed before obtaining legal representation in the matter. Accordingly, on March 24, 1986, Leiter retained the firm of Vial, Hamilton, Koch and Knox to represent Lone Star.

We are persuaded that these facts support Lone Star's claim that it had good cause to believe a lawsuit would be filed before suit was actually filed on April 18, 1986. We hold that on March 24, 1986, sufficient factors were present for Lone Star to have good cause to believe a suit would be filed. We specifically note the following factors alleged in Lone Star's affidavits attached to their motion for protective order: (1) the accident included a fatality and injuries to two other persons, one of whom was a pregnant woman, and the condition of the unborn child was unknown at that time, (2) the accident occurred when a Lone Star employee was driving a Lone Star vehicle, (3) the employee was driving while intoxicated, (4) the independent experience of Leiter, the insurance adjuster, told him that a lawsuit would be forthcoming, and (5) the objective fact that Leiter retained litigation counsel for Lone Star on March 24, 1986, before suit was filed. We are persuaded that the guidelines of *Cherokee* provide a sound basis for a proper analysis in making a determination as to when the privilege began. The facts known on March 24, combined with the experience and judgment provided by Leiter, and his decision and action in hiring litigation counsel before suit was filed, were sufficient to constitute "good cause" to believe that a lawsuit would be filed. It would be unrealistic for Lone Star to think otherwise. *Cherokee,* at 566. Therefore, any agent-representative-employee communications on that date and forward would be privileged under Rule 166b(3)(d). *Cherokee,* at 566.

■ With respect to the defense files of Vial, Hamilton, Koch & Knox, we note that any indexes of documents, notes, or memoranda of the defense attorneys would be privileged as an attorney's work product. *Garcia v. Peeples,* 734 S.W.2d 343, 344 (Tex.1987).

We order that the trial court vacate its order dated January 16, 1987. Should the trial court fail to do so, the writ of mandamus will issue.

We leave the actual determination to the trial court as to which documents are privileged after applying the standards we have set forth above. We are certain that the trial court will use the criteria we have set forth above in re-examining the documents, if necessary, to determine which are discoverable.