NATIONAL TANK COMPANY

v.

The Honorable Robert P.
BROTHERTON,
Judge.

No. D–1576.

Supreme Court of Texas.

April 7, 1993.

privileged from discovery. We modify our decision in *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40–41 (Tex.1989), to hold that investigative documents are prepared in "anticipation of litigation" for purposes of Tex.R.Civ.P. 166b(3) if a) a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue; and b) the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation. This approach will further the public policy underlying the investigatory privileges without unduly restricting discovery, as these privileges may be overcome where the requesting party demonstrates a substantial need for the materials and undue hardship in obtaining the substantial equivalent of the materials by other means. *See* Tex. R.Civ.P. 166b(3). Because we today alter the controlling law, we deny mandamus relief without prejudice to allow the trial court to reconsider its ruling in light of today's opinion.

Mike Spurgers, Wichita Falls, Jeffrey Parsons, Gerald J. Brown, Roger L. McCleary, Philip A. Lionberger, Houston, for relator.

E.L. Caraway, III, Fort Worth, Roy L. Stacy, Michael G. Lee, Dallas, Richard E. Ward, Carolyn Mitchell, Fort Worth, Craig A. Eggleston, Kenneth J. Lambert, Dallas, Roy T. Sparkman, Wichita Falls, Douglas L. Baker, Plano, Charles W. Oldham, Charles M. Barnard, Robert P. Brotherton, Wichita Falls, for respondent.

## OPINION

PHILLIPS, Chief Justice.

In this original proceeding we must determine whether accident reports and witness statements prepared by Relator and its insurer following a plant explosion are

### I

An explosion occurred on August 23, 1990, at a Wichita Falls manufacturing facility operated by the National Tank Company (NATCO), Relator in this proceeding. The explosion critically injured Rex Willson, a NATCO employee, and two other persons employed by independent contractors. Willson later died from his injuries. Allen Pease, NATCO's General Counsel and Secretary, learned of the explosion the day it occurred and dispatched Henry Townsend, NATCO's safety and risk control coordinator, to investigate. Although not a lawyer, Townsend was employed in NATCO's legal department under Pease's supervision. Pease also immediately notified David Sneed, a brokerage supervisor with American International Adjustment Company (AIAC), a representative of NATCO's liability insurers. Pease explained to Sneed the serious nature of the accident, and recommended that AIAC initiate its own investigation, which it did.

Willson's wife, individually and on behalf of her children and the estate, sued NATCO and several other defendants on January 15, 1991. Shortly thereafter, she requested that NATCO produce any reports prepared in connection with the accident investigation. NATCO objected, asserting the attorney-client, work-product, witness-statement, and party-communication privileges. In an order signed July 25, 1991, the trial court overruled NATCO's objections as to documents prepared prior to October 25, 1990, the date NATCO learned that it had been sued by Frank Kroupa, one of the other persons injured in the explosion. The trial court thus ordered NATCO to produce the documents prepared prior to that date. These documents are 1) the transcripts of four interviews of NATCO employees conducted by Henry Townsend shortly after the accident, 2) the transcripts of nine interviews of NATCO employees conducted by Phil Precht, an AIAC employee, shortly after the accident, and 3) three accident reports prepared by Precht and sent to Pease. The trial court, however, stayed the effect of this order to allow NATCO to seek mandamus relief.

NATCO first challenged the trial court's discovery order by a mandamus action in the Court of Appeals. That court denied relief by an unpublished order on September 20, 1991. NATCO then sought mandamus relief here on September 27, 1991. While NATCO's action was pending in this Court, the discovery dispute continued below regarding the depositions of Townsend and Don Hatfield, NATCO's Operations Manager at the Wichita Falls plant. When these individuals were deposed concerning their post-accident conversations with NATCO plant personnel, NATCO objected on the basis of the same privileges previously asserted in response to plaintiff's document requests. Consistent with its earlier ruling, the trial court by order signed November 15, 1991, held that these conversations were not privileged and ordered the depositions of Townsend and Hatfield to proceed "in line with the parameters placed upon the asserted privileges as set forth in this Court's order of July 25, 1991." The trial court did not stay the effect of this second discovery order. NATCO therefore moved for emergency relief in the mandamus action already pending in this Court involving the document requests. In addition to the relief earlier requested, NATCO asked us to immediately stay the Townsend and Hatfield depositions, arguing that the sought-after testimony would moot the issues involved in the document requests. The Court granted emergency relief on November 19, 1991, staying both the depositions and the production of documents previously ordered by the trial court.

The parties opposing mandamus relief in this Court are Bonded Inspections, Inc. and Helm Inspection Services, Inc., the independent contractors that employed two of the injured individuals, and Stephen Cook, one of those injured. The members of Willson's family have settled their claims.

## II

■ Mandamus will lie to correct a discovery error only if 1) the discovery order constitutes a clear abuse of discretion, and 2) the aggrieved party has no adequate remedy by ordinary appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–840 (Tex. 1992). To determine whether the trial court abused its discretion, it is necessary to examine the scope of the privileges asserted by NATCO.

NATCO first argues that each of the documents is protected by the attorney-client privilege. This privilege protects:

confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer, or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among

lawyers and their representatives representing the same client.

Tex.R.Civ.Evid. 503(b).

■ We first address the witness statements which Townsend took from NATCO employees and then gave to Pease. NATCO argues that these statements are privileged under category (2) above, as communications between the lawyer (Pease) and a representative of the lawyer (Townsend).

■ A "representative of the lawyer" for purposes of the attorney-client privilege includes "one employed by the lawyer to assist the lawyer in the rendition of professional legal services." Tex.R.Civ.Evid. 503(a)(4)(i). Assuming without deciding that Townsend was Pease's representative for purposes of this rule,[1] the witness statements are not protected by the attorney-client privilege. These communications were in the first instance made by employees at the Wichita Falls plant to Townsend; the threshold issue is whether they were privileged at that stage. The fact that the statements were first made to Townsend as Pease's representative, and then relayed to Pease, cannot provide greater protection than if the employees had made the statements directly to Pease.

■ NATCO argues that the initial communications from the employees to Townsend are protected under subdivision (1) of Rule 503(b), as communications between representatives of the client and a representative of the lawyer. We conclude based on the record before us, however, that the employees who were interviewed are not "representatives" of NATCO for purposes of the attorney-client privilege. Texas Rule of Civil Evidence 503(a)(2) provides as follows:

> A representative of the client is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client.

This definition adopts the "control group" test previously recognized by many federal courts. *See* Steven Goode & M. Michael Sharlot, *Article V: Privileges, in Texas Rules of Evidence Handbook*, 20 Hous. L.Rev. 273, 290 (1983). This test was first recognized in *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D.Pa.), *petition for mandamus and prohibition denied sub. nom., General Electric Co. v. Kirkpatrick*, 312 F.2d 742 (3d Cir.1962), *cert. denied*, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963), in which the court held that a corporation could claim the attorney-client privilege only as to statements made by employees "in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney." *Id.* at 485. Courts applying this test generally protect only statements made by the upper echelon of corporate management. William K.C. Dippel, Comment, *The Attorney–Client Privilege in the Corporate Context—Upjohn Co. v. United States*, 35 Sw.L.J. 935, 939 (1981). *See, e.g., Congoleum Indus., Inc. v. GAF Corp.*, 49 F.R.D. 82, 85 (E.D.Pa. 1969) (protection limited to corporate and division vice presidents), *aff'd*, 478 F.2d 1398 (3d Cir.1973); *Garrison v. General Motors Corp.*, 213 F.Supp. 515, 518 (S.D.Cal.1963) (only communications of directors, officers, department heads, division managers, and division chief engineers protected). The control group test reflects the distinction between the corporate entity and the individual employee and is based on the premise that only an employee who controls the actions of the corporation can personify the corporation. *Westinghouse*, 210 F.Supp. at 485; *see also* Goode & Sharlot, *supra*, at 290; R. David White, Radiant Burners *Still Radiating: Attorney–Client Privilege for the Corporation*, 23 S.Tex. L.J. 293, 299 (1982).

NATCO correctly argues that the United States Supreme Court rejected the control group test in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584

---

**1.** The record reflects that Townsend was assigned to NATCO's legal department, which was headed by Pease, and that Townsend conducted

(1981).[2] Prior to *Upjohn*, the federal courts had split between two different tests for applying the attorney-client privilege to corporations: 1) the control group test, and 2) the "subject matter" test, first recognized in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir.1970), *aff'd per curiam by an equally divided court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). Under the subject matter test, an employee's statement is deemed to be that of the corporation if:

> the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.

*Id.* at 491–92.

The Supreme Court in *Upjohn* concluded that the control-group test "overlooks the fact that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390, 101 S.Ct. at 683. The Court held that statements given by lower-level employees to the corporation's attorney at the behest of corporate management were protected. *Id.* at 395, 101 S.Ct. at 685. Although rejecting the control group test, the Court refused to expressly adopt the subject matter test.[3]

The control group and subject matter tests represent alternative approaches to applying the corporate attorney-client privilege. Both are supported by legitimate policy rationales, and neither is without its critics. *See* Goode & Sharlot, *supra*, at 290–291; Glen Weissenberger, *Toward Precision in the Application of the Attorney–Client Privilege for Corporations*, 65 Iowa L.Rev. 899, 908–13 (1980); Dippel, *supra* at 940; *The Supreme Court, 1980 Term*, 95 Harv.L.Rev. 17, 273–80 (1981). In deciding this cause, however, we are not free to choose one over the other. Texas Rule of Civil Evidence 503, which was promulgated in November 1982, almost two years after the *Upjohn* decision, clearly adopts the control group test.[4] Goode & Sharlot, *supra*, at 290; Note, *Attorney–Client Privilege for Corporate Clients: The Control Group Test*, 84 Harv.L.Rev. 424, 435 & n. 31 (1970) (discussing Proposed Federal Rule of Evidence 5–03, 46 F.R.D. 161, 249 (1969), which contained the identical test).

Despite the language of Rule 503(a)(2), NATCO argues that a lower-echelon employee may be a representative of the corporation if the employee speaks with the "blessing" of corporate management. This of course is the subject matter test, an approach clearly available, but not selected, when the Texas rules were drafted. NATCO relies on Hulen D. Wendorf et al., *Texas Rules of Evidence Manual* V–33 (3d ed. 1991), where the authors contend that the privilege should apply "in the case of a corporate employee who is not a part of the 'control group' but who has been authorized to seek legal counsel on behalf of the corporation, just as it did in *Upjohn*." In *Upjohn*, however, the employees were merely responding to a questionnaire from corporate counsel, not seeking legal counsel on behalf of the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. at 685. Likewise

---

his investigation under Pease's supervision and control.

**2.** Unlike the Texas attorney-client privilege, which is codified in the Rules of Civil Evidence, the federal privilege is a common-law doctrine. *See* Fed.R.Evid. 501.

**3.** The Court stated as follows:

> [T]he parties and various *amici* have described our task as one of choosing between two "tests" which have gained adherents in the courts of appeals. We are acutely aware, however, that we sit to decide concrete cases and not abstract propositions of law. We decline to lay down a broad rule or series of rules to govern all conceivable future questions in this area, even were we able to do so.

*Id.* at 386, 101 S.Ct. at 681.

**4.** Texas is not the only state that has rejected the Supreme Court's guidance on this matter. Illinois likewise adopted the control group test subsequent to *Upjohn*. *Consolidation Coal Co. v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 673–74, 432 N.E.2d 250, 257–58 (1982). *See* Goode & Sharlot, *supra*, at 290 n. 73.

in this case, the witnesses at the Wichita Falls plant, although they may have been speaking with management's blessing, had not been authorized to seek legal counsel on behalf of the corporation.

There is no evidence in the record that the employees interviewed by Townsend were representatives of NATCO within the meaning of Texas Rule of Civil Evidence 503(a)(2). We therefore hold these witness statements are not protected by the attorney-client privilege.

■ For the same reason, the witness statements taken by Precht, the AIAC employee that investigated the explosion, are not protected by the attorney-client privilege. NATCO contends that Precht is NATCO's representative under Rule 503(a)(2), and thus communications between Precht and Pease are privileged. As discussed below, there is no evidence to support the conclusion that Precht was NATCO's representative. Even if he were, however, the witness statements taken by Precht and given to Pease would not be privileged since the witnesses who made the statements in the first place were not NATCO's representatives. *See Upjohn*, 449 U.S. at 395–96, 101 S.Ct. at 685–86 (a client cannot cloak relevant information with a privilege merely by communicating it to the attorney).

■ We still must consider the *reports* prepared by Precht and sent to Pease. Unlike the witness statements, these reports are not transcripts of communications made by a third party, but rather constitute original communications from Precht to Pease. NATCO contends that the attorney-client privilege applies because Precht is a representative of NATCO under Rule 503(a)(2). NATCO notes that this rule contains no express requirement that the representative actually be employed by the client.

NATCO relies on *Boring & Tunneling Co. of America v. Salazar*, 782 S.W.2d 284, 289–90 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding), and *Wiley v. Williams*, 769 S.W.2d 715, 717 (Tex.App.—Austin 1989, orig. proceeding [leave denied]). We do not find these opinions persuasive, however. The *Wiley* court held that correspondence between an attorney and the client's insurer was protected by the attorney-client privilege simply because the correspondence constituted confidential communications made to facilitate the rendition of legal services, without considering whether the correspondence fell into one of the specific categories required under Rule 503(b). The *Salazar* court protected the correspondence under Rule 503(b)(1), without considering whether the adjuster was in fact a "representative" of the client for purposes of the attorney-client privilege.

We do not decide whether an employee of a liability insurer may ever be a "representative" of the insured under Rule 503(a)(2). Although the argument is not raised by NATCO, we note that liability policies typically vest the insurer with authority to hire counsel and conduct the defense of the insured. In such a case, certain employees of the insurer may qualify as representatives of the insured. However, under Rule 503(a)(2), the qualifying employees must be those actually having authority to hire counsel and to act on counsel's advice on behalf of the insured. There is no indication in the record that Precht was such an employee. NATCO argues that "through David Sneed, [Precht] received and acted upon, the legal directions and advice of Allen Pease." The thrust of NATCO's argument is that because Precht was investigating the accident under the indirect supervision of Pease, he had the authority to act on Pease's legal advice on behalf of NATCO. To the extent that Precht carried out Pease's instructions, however, it was because he was required to do so pursuant to his employment duties. NATCO concedes that Precht was acting under David Sneed's supervision. There is no indication that Precht acted on Pease's instructions in the capacity of a legal client, with discretion to either accept or reject the legal advice. We therefore hold that the reports from Precht to Pease are not protected by the attorney-client privilege.

■ The trial court also held that post-accident conversations between NATCO

employees and Don Hatfield were not protected by the attorney-client privilege. Hatfield's conversations with the NATCO plant personnel are not protected for the same reasons that the witness statements taken by Townsend are not protected: the plant personnel are not representatives of NATCO. Furthermore, the record does not establish that Hatfield is a representative of NATCO under Rule 503(a)(2). The record discloses only that Hatfield was "operations manager" at the Wichita Falls plant. NATCO offers no evidence as to whether this position vested Hatfield with authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of NATCO. NATCO does argue that both Hatfield and Townsend had "authority to act on Mr. Pease's legal advice (because it is undisputed) that the investigations they undertook were pursuant to the legal advice and instructions of Mr. Pease." This is the same unconvincing argument that NATCO makes regarding Precht. The record reflects that Townsend and Hatfield were required by their job duties to follow the instructions of Pease, a corporate superior. They were not acting on Pease's instructions in the capacity of a legal client.

Accordingly, we find no abuse of discretion by the trial court concerning its application of the attorney-client privilege.

### III

We next consider whether the documents are privileged under Texas Rule of Civil Procedure 166b(3)(a) as "the work product of an attorney." "Work product" has generally been defined as "specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories, prepared and assembled in actual anticipation of litigation or for trial." *Wiley,* 769 S.W.2d at 717; *Brown & Root U.S.A., Inc. v. Moore,* 731 S.W.2d 137, 140 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding); *Evans v. State Farm Mut. Auto. Ins. Co.,* 685 S.W.2d 765, 767 (Tex.

App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). NATCO argues, however, that the privilege is not limited to documents prepared in anticipation of litigation. This Court has not previously addressed this issue. To do so, it is necessary to examine some of the history of the work product privilege.

The work product doctrine was created by the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman,* five crew members drowned when the tugboat *J.M. Stark* sank in the Delaware River. The boat owner's attorney investigated the accident, obtaining signed statements from some of the witnesses and making memoranda of his conversations with the others. The estate of one of the deceased crew members subsequently sued the boat owner and sought by interrogatories to obtain copies of the witness statements and the attorney's memoranda prepared during the investigation. The defendant objected on the grounds that the requests called "for privileged matter obtained in preparation for litigation" and was "an attempt to obtain indirectly counsel's private files." *Id.* at 499, 67 S.Ct. at 388.

The district court ordered production, but the United States Court of Appeals for the Third Circuit reversed and the Supreme Court affirmed the judgment of the appellate court. The Supreme Court could find no existing privilege that applied, but it created a new common law privilege for what it termed the "work product of the lawyer,"[5] consisting of interviews, memoranda, briefs and other materials prepared "with an eye toward litigation." *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. The Court justified the privilege as follows:

> Proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the nec-

**5.** The term "work product" was coined during the argument before the Third Circuit in the *Hickman* case. *Hickman v. Taylor,* 153 F.2d

212, 223 (3d Cir.1945), *aff'd,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

essary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* The Court indicated that the privilege could be overcome as to factual information otherwise unavailable to the opposing party, but not as to the attorney's "mental impressions." *Id.* at 512, 67 S.Ct. at 394.

The *Hickman* work product doctrine was codified in Fed.R.Civ.P. 26(b)(3) in 1970.[6] This rule maintains the distinction between ordinary work product, which is discoverable upon a showing of "substantial need" and "undue hardship," and an attorney's "mental impressions, conclusions, opinions, or legal theories," which are discoverable, if at all, only upon a much higher showing.[7] This latter category has come to be known as "opinion" or "core" work product. *See In re Murphy,* 560 F.2d 326, 329 n. 1 (8th Cir.1977); Jeff A. Anderson et al., Special Project, *The Work Product Doctrine,* 68 Cornell L.Rev. 760, 817–20 (1983). Federal Rule of Civil Procedure 26(b)(3) has been adopted verbatim by 34 states, and in substantial part by 10 others. *See* Elizabeth Thornburg, *Rethinking Work Product,* 77 Va.L.Rev. 1515, 1520–21 (1991).

The structure of the Texas rule is somewhat different from the federal rule, however, as it simply protects the "work product of an attorney." "Work product" is not defined in the rule, and this Court has never specifically defined the term.

It is important to note that the work product exemption has played a much less-er role in Texas than in the federal system and other states due to the separate privilege in Texas that protects communications between a party's representatives. *See* Tex.R.Civ.P. 166b(3)(d). This privilege, which in one form or another has been part of the Texas Rules of Civil Procedure since their adoption in 1941, is broad enough to protect ordinary work product. *See* Alex W. Albright, *The Texas Discovery Privileges: A Fool's Game?,* 70 Tex.L.Rev. 781, 831 (1992). The specific work product exemption did not appear in the Texas Rules until 1973,[8] and there was "a dearth of decisional law" interpreting this exemption prior to 1986, as the work product privilege was often merged with the party communication privilege. *See* James B. Sales, *Pretrial Discovery in Texas Under the Amended Rules: Analysis and Commentary,* 27 S.Tex.L.Rev. 305, 315 (1986). There appears to have been more reliance on the work product privilege since 1986, when the scope of the party communication privilege was narrowed.

■ NATCO relies on the plain language of Texas Rule of Civil Procedure 166b(3) in arguing that a document need not be prepared in anticipation of litigation to be privileged as work product. NATCO points out that Rule 166b(3)(c) and (d), the witness statement and party communication privileges, expressly require that the statement or communication be made in anticipation of litigation, while Rule 166b(3)(a), the work product privilege, contains no such

---

6. Fed.R.Civ.P. 26(b)(3) provides:
 Subject to the provisions of subdivision (b)(4) of this rule [regarding experts], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

7. Some courts have held that *no showing* can overcome the protection of an attorney's mental impressions. *See, e.g., In re Grand Jury Proceedings,* 473 F.2d 840, 848 (8th Cir.1973). Others have declined to adopt an absolute rule, but recognize that this type of work product would only be discoverable in a "rare situation." *See, e.g., In re Grand Jury Investigation,* 599 F.2d 1224, 1231 (3d Cir.1979). In *Upjohn Co. v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981), the Supreme Court recognized this conflict but did not resolve it.

8. Tex.R.Civ.P. 186a (Vernon 1976).

requirement. This argument, however, is unpersuasive. As discussed below, "work product" by definition applies only to materials prepared in anticipation of litigation.

As indicated, the work product doctrine was firmly established in federal case law and codified in the federal rules when it was adopted in Texas. There is nothing to indicate that the Texas concept of "work product" was intended to be different from that of the federal courts. *See* William W. Kilgarlin et al., *Practicing Law in the "New Age": The 1988 Amendments to the Texas Rules of Civil Procedure,* 19 Tex. Tech.L.Rev. 881, 899 (1988). We have in the past looked to federal precedent in deciding work product questions. *See Garcia v. Peeples,* 734 S.W.2d 343, 348 (Tex. 1987).

There appears to be no doubt that the term "work product" in the federal courts, as well as the courts of other states, applies only to materials prepared in anticipation of litigation. *See* Fed.R.Civ.P. 26(b)(3),[9] *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393; *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984); *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* 125 F.R.D. 51, 54 (S.D.N.Y.1989); *Sterling Drug Inc. v. Harris,* 488 F.Supp. 1019, 1026 (S.D.N.Y. 1980); *Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029, 1033 (N.D.Ga.1974); *Langdon v. Champion,* 752 P.2d 999, 1005 (Alaska 1988); *National Farmers Union Prop. & Casualty Co. v. District Court,* 718 P.2d 1044, 1047 (Colo.1986) (en banc); *LaMonte v. Personnel Bd.,* 581 So.2d 866, 868 (Ala.Civ.App.1991); *Juneau v. Avoyelles Parish Police Jury,* 482 So.2d 1022, 1031 (La.Ct.App.1986).

Texas courts of appeals have also uniformly held that the privilege applies only to materials prepared in anticipation of litigation. *See Leede Oil & Gas, Inc. v. McCorkle,* 789 S.W.2d 686, 687 (Tex.App.— Houston [1st Dist.] 1990, orig. proceeding); *Star–Telegram, Inc. v. Schattman,* 784 S.W.2d 109, 110 (Tex.App.—Fort Worth 1990, orig. proceeding); *Toyota Motor Sales, U.S.A. v. Heard,* 774 S.W.2d 316, 317 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding); *Texas Dep't of Mental Health and Mental Retardation v. Davis,* 775 S.W.2d 467, 471 (Tex.App.—Austin 1989, orig. proceeding [leave denied]); *Boring & Tunneling Co. v. Salazar,* 782 S.W.2d at 286; *Wiley v. Williams,* 769 S.W.2d at 717; *Southern Pac. Trans. Co. v. Banales,* 773 S.W.2d 693, 694 (Tex. App.—Corpus Christi 1989, orig. proceeding); *Axelson, Inc. v. McIlhany,* 755 S.W.2d 170, 173 (Tex.App.—Amarillo 1988, orig. proceeding); *Brown & Root, U.S.A.,* 731 S.W.2d at 140; *Evans,* 685 S.W.2d at 767.[10]

We therefore conclude that the term "work product" as used in Rule 166b(3)(a) applies only to materials prepared in anticipation of litigation. It is not necessary to further consider the scope of the work product exemption in Texas,[11] because if

---

**9.** The federal rule, unlike the Texas rule, does not use the term "work product," and thus expressly sets forth the anticipation of litigation requirement.

**10.** Our recent decision in *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749 (Tex. 1991), is consistent with this interpretation. We held in *Owens–Corning* that work product prepared for one case remains privileged in subsequent litigation. However, this continuing privilege only applies where the material was work product in the first case, i.e., where it was prepared in anticipation of the first litigation. *Id.* at 751 ("Our ruling is compatible with interpretations given to the federal [work product rule]. This rule ... has almost universally been held to apply to materials prepared in anticipation of previous, terminated litigation.").

Commentators likewise agree that "work product" refers only to materials prepared in anticipation of litigation. *See* Albright, *supra,* at 790; Sherman L. Cohn, *The Work Product Doctrine: Protection, Not Privilege,* 71 Geo.L.J. 917, 920 (1983); *see also* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2024, at 197 (1970).

**11.** It is not clear whether the term "work product" in Rule 166b(3)(a) applies to both opinion and ordinary work product, or whether it is limited to opinion work product. This distinction, which is critical under the federal work-product doctrine, is not drawn in the rule and has apparently never been previously recognized by any Texas court. *See* Albright, *supra* at 829; Robert Ammons, Comment, *Finders Keepers No Longer the Rule: Discovery of Investigatory Materials Under the Texas and Federal Rules*

the disputed documents were prepared in anticipation of litigation, they are privileged under the witness statement and party communication privileges. We next consider those privileges.

## IV

### A

■ Texas Rule of Civil Procedure 166b(3)(c) protects from discovery witness statements "made subsequent to the occurrence or transaction upon which the suit is based and in connection with the prosecution, investigation, or defense of the particular suit, or in anticipation of the prosecution or defense of the claims made a part of the pending litigation...." Texas Rule of Civil Procedure 166b(3)(d) similarly protects communications between agents, representatives or employees of a party when made in anticipation of litigation. The only issue concerning the applicability of these privileges in this case is whether the witness statements and investigative reports generated by NATCO and its insurer were made in anticipation of litigation.

■ An investigation is conducted in anticipation of litigation if it meets the two-prong test of *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40–41 (Tex.1989). The first prong of the *Flores* test is objective. The court is required to determine whether a reasonable person, based on the circumstances existing at the time of the investigation, would have anticipated litigation. We stated in *Flores* that "[c]onsideration should be given to outward manifestations which indicate litigation is *imminent.*" *Id.* at 41 (emphasis added). Upon

further consideration, however, we conclude that the "imminence" requirement impairs the policy goals of the witness statement and party communication privileges. Serving the function filled in many jurisdictions by the work product doctrine, these privileges seek to strike a balance between open discovery and the need to protect the adversary system. As the Supreme Court noted in *Hickman*, a party [12] must be free to assemble information about the case free of undue interference from the other side:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94. The investigative privileges promote the truthful resolution of disputes through the adversarial process by encouraging complete and thorough investigation of the facts by both sides. *See* Cohn, *supra* note 10, at 919–920; Anderson et al., *supra*, at 785; *see also El Paso Co.*, 682 F.2d at 542; *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C.Cir. 1980). At the same time, they do not unduly thwart discovery, as they are limited in scope and can be overcome by a showing of substantial need for the information and

*of Civil Procedure*, 39 Baylor L.Rev. 271, 282 (1987). We recently noted that "[t]he primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney," and does not extend to "facts the attorney may acquire." *Owens–Corning Fiberglas*, 818 S.W.2d at 750 & n. 2. *See also Axelsv.., Inc. v. McIlhany*, 798 S.W.2d 550, 554 n. 8 (Tex.1990). Also, if Rule 166b(3)(a) applies to ordinary work product, it apparently conflicts with the party communication privilege as to the protection of factual reports that fall under both privileges. The party communication privilege provides for a hardship exception, whereas the work product exemption does not. Commentators have pointed out that ordinary work

product should be discoverable upon a showing of substantial need and undue hardship. Albright, *supra*, at 830; Kilgarlin, *supra*, at 899.

We do not now decide this issue, as it is not necessary to do so in deciding the case, and has not been briefed or argued by the parties.

**12.** Although *Hickman* applied only to materials prepared by an attorney, the federal work product doctrine no longer distinguishes between an investigation conducted by a party and one conducted by its representative. The Texas investigative privileges likewise do not make this distinction.

undue hardship in obtaining it from other sources.

■ Considering these policies, we conclude that the objective prong of *Flores* is satisfied whenever the circumstances surrounding the investigation would have indicated to a reasonable person that there was a substantial chance of litigation. The confidentiality necessary for the adversary process is not defeated because a party, reasonably anticipating future litigation, conducts an investigation prior to the time that litigation is "imminent." We accordingly modify *Flores* to the extent that it accords protection only to investigations conducted when litigation is imminent.

■ We agree with the dissenting justices' characterization of "substantial chance of litigation." This does not refer to any particular statistical probability that litigation will occur; rather, it simply means that litigation is "more than merely an abstract possibility or unwarranted fear." 851 S.W.2d at 216. The underlying inquiry is whether it was reasonable for the investigating party to anticipate litigation and prepare accordingly.

■ The real parties in interest argue, and some courts of appeals have held, that the objective prong of *Flores* may be satisfied only where the *plaintiff* engages in some action indicating an intent to sue. *See, e.g., Boring & Tunneling Co.,* 782 S.W.2d at 287. *Flores,* however, does not hold this. Rather, it requires the trial court to examine the *totality of the circumstances* to determine whether the investigation is conducted in anticipation of litigation. *Flores,* 777 S.W.2d at 41. Requiring that the plaintiff manifest an intent to sue would also be at odds with the policy goals of the witness statement and party communication privileges. These privileges are designed to promote the adversarial process by granting limited protection to investigations conducted in preparation for litigation. Common sense dictates that a party may reasonably anticipate suit being filed, and conduct an investigation to prepare for the expected litigation, before the plaintiff manifests an intent to sue. *See Wiley* 769 S.W.2d at 717; *Smith v.*

*Thornton,* 765 S.W.2d 473, 477 (Tex.App.— Houston [14th Dist.] 1988, no writ); *Lone Star Dodge, Inc. v. Marshall,* 736 S.W.2d 184, 189 (Tex.App.—Dallas 1987, orig. proceeding).

■ We held in *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex. 1986), that "[t]he mere fact that an accident has occurred is not sufficient to clothe all post-accident investigations . . . with a privilege." *Id.* at 802. We adhere to this holding, but we disapprove *Stringer* to the extent that it holds that the circumstances surrounding an accident can never by themselves be sufficient to trigger the privilege. If a reasonable person would conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance that litigation would ensue, then the objective prong of *Flores* is satisfied.

The second prong of the *Flores* test is subjective. There, we held that the party invoking the privilege must have had "a good faith belief that litigation would ensue." 777 S.W.2d at 41. For the reasons previously discussed with respect to the objective prong, however, we conclude that the subjective prong is properly satisfied if the party invoking the privilege believes in good faith that there is a substantial chance that litigation will ensue. It does not further the policy goals of the privilege to require the investigating party to be absolutely convinced that litigation will occur. Also, although not expressly stated in *Flores,* we believe that the subjective prong plainly requires that the investigation actually be conducted for the purpose of preparing for litigation. An investigation is not conducted "in anticipation of litigation" if it is in fact prepared for some other purpose. As with the objective prong, the court must examine the totality of the circumstances to determine whether the subjective prong is satisfied.

Most courts in other jurisdictions construing "anticipation of litigation" under Federal Rule of Civil Procedure 26(b)(3) and its state counterparts likewise do not require that plaintiff have manifested an intent to sue to trigger the privilege.

Rather, it is sufficient if the circumstances indicate that the materials were prepared because of the prospect of litigation. *See, e.g., Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1120 (7th Cir. 1983); *El Paso Co.,* 682 F.2d at 542; *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979); *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir. 1977); *Litton Indus.,* 125 F.R.D. at 54; *Winter Panel Corp. v. Reichhold Chems., Inc.,* 124 F.R.D. 511, 513–14 (D.Mass.1989); *Anderson v. Torrington Co.,* 120 F.R.D. 82, 86 (N.D.Ind.1987); *State ex rel. Corbin v. Weaver,* 140 Ariz. 123, 680 P.2d 833, 839 (Ariz.Ct.App.1984); *Mullins v. Vakili,* 506 A.2d 192, 197–98 (Del.Super.Ct.1986); *American Bldgs. Co. v. Kokomo Grain Co.,* 506 N.E.2d 56, 62–63 (Ind.Ct.App. 1987); *Ashmead v. Harris,* 336 N.W.2d 197, 200 (Iowa 1983); *Kaarup v. St. Paul Fire & Marine Ins. Co.,* 436 N.W.2d 17, 21 (S.D.1989). It is not necessary that litigation be threatened or imminent, as long as the prospect of litigation is identifiable because of claims that have already arisen. *See Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 151 (D.Del.1977); *United States v. Exxon Corp.,* 87 F.R.D. 624, 638 (D.D.C.1980); *Great Lakes Concrete Pole Corp. v. Eash,* 148 Mich.App. 649, 385 N.W.2d 296, 298 n. 2 (1986); *United States v. Bonnell,* 483 F.Supp. 1070, 1078 (D.Minn.), *modified on other grounds,* 483 F.Supp. 1091 (D.Minn.1979).

The fundamental problem that has plagued other courts is determining whether a "routine" investigation is conducted in anticipation of litigation. The Advisory Committee Notes to the 1970 federal rules amendments provide that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" are not protected. *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery,* 48 F.R.D. 485, 501 (1970). Accordingly, many courts have recognized a bright-line "ordinary course of business" exception.

For example, in *Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029 (N.D.Ga.1974), the court compelled discovery of defendant's investigation of a fatal helicopter crash. The court found that "defendants routinely have such reports prepared when injuries are sustained in the crash of one of the helicopters they manufactured," *id.* at 1032, and therefore the reports were prepared in the ordinary course of business and not in anticipation of litigation. The court rejected defendant's argument that the privilege should apply because helicopter crashes causing serious injury routinely give rise to litigation. *Id. See also Soeder v. General Dynamics Corp.,* 90 F.R.D. 253, 255 (D.Nev.1980); *McDougall v. Dunn,* 468 F.2d 468, 473 (4th Cir.1972); *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 372–373 (N.D.Ill.1972); *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 118 (N.D.Ga.1972); *Sterling Drug,* 488 F.Supp. 1019, 1026 (S.D.N.Y. 1980); *National Farmers Union Property and Casualty Co. v. District Court,* 718 P.2d 1044, 1047–48 (Colo.1986) (en banc); *Henry Enters., Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915, 921 (1979); *Langdon v. Champion,* 752 P.2d 999, 1006–07 (Alaska 1988).

Other courts, however, have rejected a hard and fast ordinary course of business exception, recognizing that a prudent party may routinely prepare for litigation after a serious accident. *See Ashmead,* 336 N.W.2d at 200 ("It does not matter that the investigation is routine. Even a routine investigation may be made in anticipation of litigation.") (citations omitted); *Harriman v. Maddocks,* 518 A.2d 1027, 1034 (Me.1986). In holding that an insurer's routine post-accident investigation was privileged, the court in *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84, 89–90 (1978), concluded as follows:

> In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case.... Although

a claim may be settled short of the instigation of legal action, there is an ever-present possibility of a claim's ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

*See also Almaguer v. Chicago, Rock Island & Pac. R.R.*, 55 F.R.D. 147, 149 (D.Neb.1972). The *McAlpine* court made clear that routine post-accident investigations would not always be privileged, as "[i]n many cases an insurer may prepare reports for a purpose other than in response to the threat of litigation." *McAlpine*, 391 A.2d at 90.

Most commentators disapprove of a bright-line ordinary course of business exception. *See* Anderson et al., *supra*, at 852 ("[A] court should treat the ordinary course of business criterion as merely one factor among many when applying the anticipation-of-litigation test."); Albright, *supra*, at 845 ("Although it is true that a document routinely prepared for business purposes other than litigation is less likely to have been prepared in anticipation of litigation, it is not true that every investigation conducted on a routine basis is conducted for purposes other than litigation."); Robert H. Oberbillig, Note, *Work Product Discovery: A Multifactor Approach to the Anticipation of Litigation Requirement in Federal Rule of Civil Procedure 26(b)(3)*, 66 Iowa L.Rev. 1277, 1294–95

(1981) (arguing that excluding documents prepared in the ordinary course of business from protection "overlook[s] the possibility that the ordinary course of business developed out of a desire to adequately prepare for future litigation").

■■■ We agree that there should be no bright-line ordinary course of business exception. It may very well be that a party routinely investigates serious accidents because such accidents routinely give rise to litigation. As with other investigations, an investigation performed in the ordinary course of business is conducted in anticipation of litigation if it passes both prongs of the *Flores* test. With regard to the subjective prong, the circumstances must indicate that the investigation was in fact conducted to prepare for potential litigation. The court therefore must consider the reasons that gave rise to the company's ordinary business practice. If a party routinely investigates accidents because of litigation and nonlitigation reasons, the court should determine the primary motivating purpose underlying the ordinary business practice. *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb.1981); *Schaffer v. Rogers*, 362 N.W.2d 552, 555 (Iowa 1985); *LaMonte v. Personnel Board of Jefferson County*, 581 So.2d 866, 868 (Ala.App.1991). *Cf. GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51 (S.D.N.Y.1979) (document that was prepared "at least in part" to prepare for litigation was privileged).[13]

13. Justice Doggett assumes that all claims investigations conducted by an insurance company will be privileged under today's opinion. 851 S.W.2d at 212–213. This is incorrect. An insurer, like any other party, must establish that the circumstances reasonably indicated a substantial chance of litigation, that the insurer believed in good faith that litigation would ensue, and that the investigation was conducted primarily to prepare for the expected litigation. An insurer routinely investigating a claim to determine whether coverage exists under its policy will in many cases not be able to meet these criteria. We thus do not adopt the "minority" rule referred to in *Langdon v. Champion*, 752 P.2d 999 (Alaska 1988), and cited by Justice Doggett, 851 S.W.2d 212–213, that protects "virtually all insurance carrier investigations." 752 P.2d at 1006.

Justice Doggett also contends that our holding unfairly restricts discovery because "immediate

post-accident investigations can uncover fresh evidence from witnesses and the scene that will often not be available at any other time." 851 S.W.2d at 212–213. This analysis ignores the exception to the party-communication and witness-statement privileges set forth in Rule 166b(3)(e), which allows discovery of otherwise privileged materials upon a showing of substantial need and undue hardship in obtaining the substantial equivalent of the materials by other means. This exception, which is patterned after a similar exception in Fed.R.Civ.P. 26(b)(3), has been rarely invoked by parties in Texas seeking discovery.

Justice Doggett further argues that the standard announced today will not be as clear and easy to apply as the "outward manifestations" test attributed to *Flores*, under which the investigatory privilege does not apply until the plaintiff manifests an intent to sue. Whether an investigation is conducted in anticipation of liti-

In summary, an investigation is conducted in anticipation of litigation for purposes of Rule 166b(3) when a) a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue; and b) the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation.

### B

 Normally in a mandamus proceeding such as this, we would next determine whether the trial court abused its discretion in determining that the post-accident investigation was not conducted in anticipation of litigation. In this case, however, as we have modified the controlling legal standard, we believe that the trial court should have an opportunity to reconsider its conclusion in light of today's opinion. We therefore conclude that the writ of mandamus should be denied without prejudice [14] to allow the trial court to reconsider NATCO's objections based on the witness statement and party communication privileges.

### V

We next consider whether NATCO has an adequate remedy by appeal. We concluded in *Walker* that the remedy by appeal is not adequate when the trial court erroneously orders disclosure of privileged information which will materially affect the rights of the aggrieved party. 827 S.W.2d at 843. Most of the documents at issue here are statements of witnesses to the explosion taken shortly after it occurred. The information in these statements obviously could have a significant impact on

the assignment of liability. NATCO therefore has no adequate remedy by appeal.

For the foregoing reasons, the writ of mandamus is denied without prejudice to allow the trial court to reconsider NATCO's objections based on the witness statement and party communication privileges in light of today's opinion. The stay order previously issued by this Court remains in effect only so long as necessary to allow the trial court to act. The trial court may in its discretion lift the stay when it deems appropriate.

GONZALEZ, Justice, concurring.

I concur in the judgment of the Court, but disagree with part IV of the Court's opinion. The two-prong test of *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38 (Tex.1989), is not used in any other jurisdiction that has interpreted the phrase "anticipation of litigation." For the reasons stated in *Scott v. Twelfth Court of Appeals*, 843 S.W.2d 439, 447 (Tex.1993) (Gonzalez, J., dissenting), I would overrule *Flores* and bring Texas in line with the overwhelming majority of other jurisdictions that have addressed this issue.

DOGGETT, Justice, concurring [1] and dissenting.

While a widow plans a funeral, the corporation in whose facility her husband was killed conducts an investigation. While family and friends mourn, the corporation obtains witness statements and prepares reports concerning the circumstances surrounding the death. If this occurrence is ever considered by a judge and jury, they should be able to hear the plain, unvarnished truth—to learn what really happened when memories were fresh and unpolished by counsel.

But now the majority [2] puts a stop to all of that; it approves concealment of this

---

gation has proved to be an elusive concept, producing a substantial amount of litigation in federal and state courts. Surely *Flores* did not solve this problem, as its standard has also produced substantial litigation.

**14.** As discussed in the next section, NATCO has demonstrated that it has no adequate remedy by appeal.

**1.** While I concur in the judgment that mandamus not issue here, I vigorously dissent from the reasoning of the plurality opinion.

**2.** Although Chief Justice Phillips' writing represents only a plurality opinion, I refer here to the "majority" because my disagreement also applies to the writings of Justices Gonzalez and Hecht.

investigation. As the family buries the victim, the corporation can bury any inconvenient facts it has learned. There is certainly nothing improper about the corporation investigating, but justice may well be defeated if the fruits of that investigation are hidden from the victim as well as other parties who may be forced to defend themselves against charges of wrongdoing. Such unwarranted secrecy defeats the search for truth and violates the previous law of Texas, as the trial judge in Wichita properly recognized. Unfortunately, once again neither an explicit procedural rule nor the prior decisions of this court prevent the continued erection of what is essentially a double standard of justice in Texas. Amply displayed here is the added cost and delay resulting from the majority's eagerness to intrude rather than willingness to accept our existing law.[3]

### I.

So that the real facts may ultimately be made known, we permit parties discovery before a trial begins. That process is designed to draw no distinction between the weak and the strong. The contrary approach approved today—secrecy—will sometimes benefit one side and sometimes another,[4] but it will invariably make truth its first casualty. This court's commitment to openness has previously been firm.[5] Most recently in *State v. Lowry*, 802 S.W.2d 669 (Tex.1991, orig. proceeding), an opinion I authored for a unanimous court, discovery worked to the immediate benefit of the most powerful insurance companies

in this country. And, under the circumstances of that case, rightly so. There, as in so many of our prior decisions, this court set forth the principle that should govern the present dispute:

Affording parties full discovery promotes the fair resolution of disputes by the judiciary. This court has vigorously sought to ensure that lawsuits are "decided by what the facts reveal, not by what facts are concealed." Discovery is thus the linchpin of the search for truth, as it makes "a trial less of a game of blind man's bluff and more a fair contest with the issues and facts disclosed to the fullest practicable extent." In recent years, we have sought to secure this objective through both revision of the Texas Rules of Civil Procedure and our opinions discouraging gamesmanship and secrecy.

Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery. Very limited exceptions to the strongly preferred policy of openness are recognized in our state procedural rules and statutes. *See* Tex.R.Civ.Evid. 501; Tex. R.Civ.P. 166(b)(3).

802 S.W.2d at 671 (case citations omitted). Today, however, this is all just history, as privileges to hide the truth are unreasonably expanded.

Among "the very limited exceptions to [our] strongly preferred policy of openness," *Lowry*, 802 S.W.2d at 671, is that for

---

**3.** The lethal explosion occurred on August 23, 1990; Judge Brotherton properly applied Texas law to permit discovery by an order of July 25, 1991; the court of appeals promptly and appropriately rejected mandamus on September 27, 1991. After according National Tank emergency relief in November 1991, this court heard oral argument on March 10, 1992 and now obstructs access to information that could "significantly place the blame for the explosion on ... National Tank Company...." 851 S.W.2d at 213.

**4.** Indeed, while the effect of the majority's effort is to slant the litigation process, individual plaintiffs are hardly the only ones who suffer. Here two small businesses, Bonded Inspections, Inc. and Helm Inspection Services, Inc., oppose

mandamus as real parties in interest seeking access to the truth to use in their own defense.

**5.** *See Axelson v. McIlhany*, 798 S.W.2d 550, 553 (Tex.1990, orig. proceeding) (abuse of discretion to deny discovery of potentially relevant documents without reviewing them in camera); *Garcia v. Peeples*, 734 S.W.2d 343, 347–48 (Tex.1987, orig. proceeding) (abuse of discretion to grant a blanket protective order against sharing discovery with other litigants); *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985, orig. proceeding) (burden is on party asserting a privilege from discovery to produce evidence concerning its applicability); *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984, orig. proceeding) (abuse of discretion to deny discovery of alternative designs of product).

written statements of potential witnesses and parties ... [and] [c]ommunications between agents or representatives or the employees of a party to the action or communications between a party and that party's agents, representatives or employees, when made subsequent to the occurrence or transaction upon which the suit is based and in connection with the prosecution, investigation or defense of the particular suit, or in anticipation of the prosecution or defense of the claims made a part of the pending litigation. Tex.R.Civ.P. 166b(3)(c) and (d). Given the persistent efforts of skilled attorneys to employ these provisions to suppress information adverse to their clients, Texas courts have frequently written on this subject. In the most recent attempt to prevent these exceptions from swallowing the rule, our court defined an explicit two part test to ascertain whether an investigation has been conducted in anticipation of litigation. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38 (Tex.1989, orig. proceeding). There must be first "an objective examination of the facts surrounding the investigation [that] [c]onsider[s] outward manifestations which indicate that litigation is imminent;" and second, a subjective determination that "the party opposing discovery had a good faith belief that litigation would ensue." *Id.* at 41. We concluded that "[u]nless there is an abuse of discretion, the trial court's ruling should not be disturbed." *Id.* While admitting no abuse of discretion occurred here, the majority nevertheless "disturbs" this litigation in a highly disturbing manner.

As used in the first element of this test, the term "outward manifestations" means that the only investigations that can legitimately be considered to have been made "in anticipation of litigation" are those conducted after a claimant has given some objective indication of an intent to sue. *See Enterprise Prod. Co. v. Sanderson,*

759 S.W.2d 174, 179 (Tex.App.—Beaumont 1988, orig. proceeding); *Foster v. Heard,* 757 S.W.2d 464, 465 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding); *Texaco Ref. & Mktg., Inc. v. Sanderson,* 739 S.W.2d 493, 495 (Tex.App.—Beaumont 1987, orig. proceeding); *Phelps Dodge Ref. Corp. v. Marsh,* 733 S.W.2d 359, 361 (Tex. App.—San Antonio 1987, orig. proceeding). Such actions by the plaintiff could include "commencing an investigation of the accident, retaining an attorney or private investigator and, of course, making a claim or demand for damages." *Phelps,* 733 S.W.2d at 361. This well-developed rule had already become known as the "outward manifestations" test when we incorporated that term as a part of the standard announced in *Flores.* *See Enterprise Prod.,* 759 S.W.2d at 179.

Previously, in *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex. 1986, orig. proceeding) (per curiam), we had refused to shield from discovery interviews and an investigation notebook compiled for the Santa Fe Railroad shortly following a train collision which killed a brakeman. Although "any fool" might have known that a lawsuit would result from such an incident, *Flores,* 777 S.W.2d at 43 n. 1 (Gonzalez, J., dissenting), we nonetheless realized that the compelling need for both parties to have equal access to all the facts requires that any exceptions to open discovery be very narrowly drawn. "The mere fact that an accident has occurred is not sufficient to clothe all post-accident investigations, which frequently uncover fresh evidence not obtainable through other sources, with a privilege." *Stringer,* 720 S.W.2d at 802; *see also Robinson v. Harkins & Co.,* 711 S.W.2d 619, 621 (Tex.1986, orig. proceeding) (per curiam) (pre-suit investigation made after collision between train and a truck not made in anticipation of litigation).

Abruptly abandoning these decisions in a continued disregard of Texas precedent,[6]

---

**6.** *See, e.g., Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 n. 10 (Tex.1993) (attempting to explain that the opinion *only* overrules one prior decision of this court, rather than four); *Boyles v. Kerr,* 1992 WL 353277 (Tex.1992) (overruling 1987 decision creating

cause of action for negligent infliction of emotional distress), *Walker v. Packer,* 827 S.W.2d 833, 841–42 (Tex.1992, orig. proceeding) (expressly "disapproving" a large body of Texas caselaw); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826

the majority gropes for euphemisms. *Flores* is not overruled; it is "modified," 851 S.W.2d at 195, and "[u]pon further consideration," *id.* at 203, "alter[ed]" beyond recognition. *Id.* at 195. The majority merely "disapprove[s] *Stringer* to the extent [that it applies to] sever[e] accident[s]." *Id.* at 204.[7] Yet, had today's opinion been in place, the opposite result would have been required in both *Flores* and *Stringer*. That jurisprudence, as well as the multiple decisions of our courts of appeals are simply replaced with a new rule—corporate clairvoyance. "[A]n investigation [conducted] before the plaintiff manifests an[y] intent to sue"—indeed an investigation conducted before the victim has been buried—can be completely hidden from view. 851 S.W.2d at 204.

Since our prior decisions concerning it, Rule 166b(3) has been made even more precise in its limitations on privileges to discovery. To come within its scope, the documents involved must have been prepared "in connection with the prosecution, investigation, or defense of the *particular* suit, or in anticipation of the prosecution or defense of the claims made a part of the pending litigation." Tex.R.Civ.P. 166b(3)(c) and (d) (emphasis added). The term "particular," which had already been present in the witness statement portion of Rule 166b(3), was added to the party communications provision to "standardize [Rule 166b(3)'s] language." Tex.R.Civ.P. 166b, Advisory Committee's Comment to 1990 Change. Significantly, we standardized by *adding* the words "particular suit" to the party communications subpart, rather than removing it from the witness statement provision. In so doing, as at least one prominent commentator has noted, we codified our recent decisions regarding the scope of these privileges. "[I]t is now clear that a mere 'generic anticipation' of litigation is not sufficient to invoke the

witness statement or party communication exemptions...." William Dorsaneo, 3A Texas Litigation Guide § 89A.03[1][c] (1992).

## II.

Limiting discovery by expanding privileges for party communications and witness statements, we are told, will "promote the truthful resolution of disputes through the adversarial process by encouraging complete and thorough investigation of the facts by both sides." 851 S.W.2d at 203. This is basically a "finders keepers" theory of information gathering: its objective is not that of revealing the whole truth but only selective bits and pieces in the course of a good fight. It wrongly assumes that the widow, who has no permanent accident investigation team, who has no insurance adjuster to summon, and whose access to the explosion site is barred, has an equal opportunity to conduct a "complete and thorough investigation." *Id.*

In its frequent reliance on federal precedent, the majority is oblivious to an original objective of formal discovery rules. The drafter of the discovery components of the 1938 Federal Rules of Civil Procedure concluded that they

mark the highest point so far reached in the English speaking world in the elimination of secrecy in the preparation for trial. Each party may in effect be called upon by his adversary or by the judge to lay all his cards upon the table, the important consideration being who has the stronger hand, not who can play the cleverer game.

Edson Sunderland, *Discovery Before Trial Under the New Federal Rules*, 15 Tenn. L.Rev. 737, 739 (1939). Similarly, a Special Assistant to the Attorney General in charge of monitoring federal decisions in-

---

S.W.2d 489, 520 n. 37 (Tex.1992) (disavowing a prior opinion signaling the constitutionality of consolidating school district tax bases); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5–6 (Tex.1991) (ignoring recent precedent, looking instead to overruled case).

**7.** This is becoming a familiar pattern. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852

S.W.2d at 446 n. 10 (attempting to show that only one, rather than four, prior decisions of this court overruled in deciding an issue not even raised by the parties); *Walker v. Packer*, 827 S.W.2d at 842 (noting the "disapproval" of three decisions of this court).

terpreting the new rules, said that they were written

> with a view to departing as far as possible from "the sporting theory" of justice and to fulfilling that concept of litigation which conceives a lawsuit as a means for ascertaining the truth, irrespective of who may be temporarily in possession of the pertinent facts.

Alexander Holtzhoff, *New Federal Procedure and the Courts* 7 (1940). Unfortunately, due to the excessive gamesmanship by advocates entrenched in the very antagonistic roles today celebrated by the majority, discovery rules have not achieved their intended goals. As this court has previously observed:

> [The goals] of the discovery process [are] often frustrated by the adversarial approach to discovery. The "rules of the game" encourage parties to hinder opponents by forcing them to utilize repetitive and expensive methods to find out the facts.

*Garcia v. Peeples*, 734 S.W.2d at 347 (citing Wayne Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change*, 31 Vand.L.Rev. 1295, 1303–15 (1978) [hereinafter *Adversary Discovery* ]). While the adversarial system is "an excellent system" for *evaluating* information, because it "forces factfinders to think hard before making up their minds," it is often "a lousy method of information *development*." Kathleen Waits, *Work Product Protection for Witness Statements: Time for Abolition*, 1985 Wis.L.Rev. 305, 338–39 (1985) (emphasis added). Brazil summarizes the reasons:

> In short, adversarial investigation . . . enables counsel to play the games of deception, concealment, and manipulation that defeat the purposes discovery was intended to serve.

*Adversary Discovery, supra*, at 1319.

### III.

Rather than striving to promote the goals of discovery through efficient distribution of information, the majority actively undercuts them by adopting a rule which will increase litigants' costs, will give parties additional opportunity to conceal the truth, and will unfairly advantage institutional litigants, which have access to greater information than the individual citizens against whom they are often aligned. Failing to confine properly the party communication and witness statement privileges, generally adds unnecessary costs to the discovery process. Limiting each litigant to preparing its own separate investigation wastes resources by causing duplication of effort, while creating complex rules of privilege generates disputes apart from the merits of the case. *See* Elizabeth Thornburg, *Rethinking Work Product*, 77 Va. L.Rev. 1515, 1561 (1991); Waits, *supra*, at 319, 322–24. Since litigation occurs in a taxpayer-funded forum and is invested with a public interest, these costs are imposed on not only litigants, but also on society as a whole. *See* Thornburg, *supra*, at 1571.

By requiring the party claiming privilege to show that a potential opponent had taken objectively identifiable steps toward filing suit, *Flores* gave trial courts a relatively straightforward and easy-to-apply standard by which to determine whether materials were gathered in anticipation of litigation. In contrast, the majority's amorphous standard will only produce more time-consuming evidentiary hearings and additional disagreement among the courts regarding its scope. More importantly, by significantly reducing the secreting of relevant information, *Flores* served the underlying purposes of our discovery rules. As we recognized in *Stringer*, 720 S.W.2d at 802, immediate post-accident investigations can uncover fresh evidence from witnesses and the scene that will often not be available at any other time. Subsequent discovery is usually a most imperfect substitute:

> Such interviews and depositions . . . often are taken weeks, months, or even years after the incident. The witnesses' recollections may have weakened over time or may have been enhanced or shaped by intervening conversations with opposing counsel.

Thornburg, *supra*, at 1556; *see also* Waits, *supra*, at 318 (decisions shielding contemporaneous witness statements from discovery "disregard the rapid deterioration of

human memory and sacrifice highly probative and reliable evidence on the altar of work product"); Edward Cooper, *Work Product of the Rulesmakers*, 53 Minn. L.Rev. 1269, 1322 (1969) (access to witness statements "may provide the only meaningful opportunity to recall legitimately vanished memory....[and] invaluable in ... paving the way for effective cross-examination"). The majority's so-called "common sense" definition of "in anticipation of litigation" makes no sense at all in terms of our traditional Texas commitment to open discovery; henceforth every institutional litigant will claim and often obtain privilege for post-accident reports. Neither the thousands of Texans harmed nor the jurors constitutionally assigned to decide their cases will ever know the whole truth about the matters at issue.

Nor is the majority's approach mitigated by the possibility that a litigant might occasionally surmount the hurdle erected today by showing a "substantial need" for the materials, and an inability to obtain equivalent information except through "undue hardship." Tex.R.Civ.P. 166b(3)(e). Unfairly reversing the burden of proof by creating a presumption in favor of secrecy, this exception requires parties to articulate a need for materials when there has not even been an opportunity to unearth their existence. "Simply stated, it is difficult to prove that you have substantial need of evidence and cannot obtain it without undue hardship unless you know what the evidence is." David Keltner, Texas Discovery § 3:200.1 (1992); *see also Lowry*, 802 S.W.2d at 673 (noting the inherent difficulty in showing a particularized need for documents when their contents are unknown). Although the substantial need

and undue hardship exception is entirely undeveloped in Texas, federal courts require the party seeking discovery to show that the privileged materials are "essential to the preparation of one's case." *See Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451, 462 (1947). Such a narrow standard provides no significant relief from today's expansion of privilege.

### IV.

Today's opinion further bars access to admittedly relevant information that even without litigation would have been generated in the ordinary course of business. This twist on the majority's position provides an additional affront to prior Texas caselaw and our commitment to open discovery. Several courts have noted that documents prepared in the ordinary course of business are not within the scope of the party communication or witness statement privileges. *See Wiley v. Williams*, 769 S.W.2d 715, 717 (Tex.App.—Austin 1989, orig. proceeding); *Evans v. State Farm Mut. Auto Ins. Co.*, 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Axelson, Inc. v. McIlhany*, 755 S.W.2d 170, 173 (Tex. App.—Amarillo 1988, orig. proceeding), *overruled in part on other grounds*, 798 S.W.2d 550 (Tex.1990, orig. proceeding).

Among the biggest winners from today's writing are casualty insurance companies. Since claim investigations could also reasonably be considered as preparations for likely future litigation, they are probably henceforth shielded from discovery.[8] One court recently condemned the "minority rule" adopted here[9] as "clash[ing]" with the objective of "ascertain[ing] the truth"

---

8. However, today's opinion should not be construed to shield post-accident reports from discovery in litigation involving the insurer's breach of its duty of good faith and fair dealing. Because such a suit is based on the denial of a claim, investigations conducted between the accident and the time of denial are not made "subsequent to the occurrence or transaction upon which the suit is based." Tex.R.Civ.P. 166b(3)(c) and (d); *Jackson v. Downey*, 817 S.W.2d 858 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Gilbert v. Black*, 722 S.W.2d 548 (Tex.App.—Austin 1987, orig. proceeding).

9. Today's writing concerning ordinary course of business is practically indistinguishable from the severely criticized minority rule. Despite reliance on the tenuous requirement that investigations be made "primarily" for litigation purposes in order to come within the privilege, *see* 851 S.W.2d at 206 n. 13, the majority fails to offer any example in which materials gathered both in the ordinary course of business and "in anticipation of litigation" under its new standard will not be privileged.

by permitting access to "hardly any document authorized by or for an insurer." *Langdon v. Champion,* 752 P.2d 999, 1007 (Alaska 1988).[10] But today's ruling covers far more than insurance companies; indeed, every business record containing facts that could bear on a mishap will be unavailable without a special showing.

As several scholars have pointed out, in practice the increased protection from discovery of post-accident investigations, while superficially neutral, decidedly favors repeat institutional litigants over those who find themselves in court once as a result of being injured; the rule adopted here is clearly designed to favor defendants over plaintiffs. Waits, *supra,* at 313; Thornburg, *supra,* at 1561. This is because

> institutional defendants have a superior ability to structure their dealings so as to create more work product, and they benefit more from delay. In addition, because plaintiffs have the burden of proof, they are more likely to be harmed by a denial of access to information.

*Id.* at 1562. One empirical study demonstrates the skewed effects of the party communication and witness statement privileges; it found that corporate defense counsel are more likely both to resist discovery and to use it for purposes of delay than attorneys for individuals. *See* Wayne Brazil, *Civil Discovery: Lawyers' Views of Its Effectiveness, Its Principal Problems and Abuses,* 1980 Am.B.Found.Res.J. 787, 853 (1980); Wayne Brazil, *Views from the Front Lines: Observations by Chicago Lawyers About the System of Civil Discovery,* 1980 Am.B.Found.Res.J. 219, 243 n.

45 (1980). Today the majority provides further incentive for resistance and delay. Creation of such inherently unfair procedures takes an enormous toll on our system of justice:

> Academics and even lawyers tend to forget that every opinion is more than words on a page or a citation in a treatise. It represents expense and probably misery for everyone involved, and for society at large.... In the case of work product, the need for the doctrine will have to be awfully strong to warrant all the fuss.

Waits, *supra,* at 324. Here the "fuss" raised was in no way warranted. The decisions of both the trial court and the court of appeals were entirely proper under the prior law of Texas, as conceded by the majority in its hesitation now to issue a writ of mandamus.

Much is revealed in the majority's declaration that National Tank Company has no adequate remedy by appeal because the information in the contested statements "could have a significant impact on the assignment of liability." 851 S.W.2d at 207. Thus, while expressly acknowledging the potentially critical relevance of the facts in these documents, the majority contends that such relevance provides greater reason to keep them hidden from other litigants and the factfinder. Because this approach only provides more privileges for the privileged, I dissent.[11]

SPECTOR, Justice, concurring and dissenting.

I concur in the judgment that mandamus should not issue, but dissent from the cre-

---

**10.** Such reports are generally held discoverable as having been prepared in the ordinary course of business. *See National Farmers Union Prop. & Cas. Co. v. District Court for the City and County of Denver,* 718 P.2d 1044, 1047–48 (Colo. 1986) (en banc) (allowing discovery of investigations by attorney for insurer, as made in the ordinary course of business); *Henry Enter., Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915, 921 (1979) (insurer's initial investigations of claim discoverable); *Soeder v. General Dynamics Corp.,* 90 F.R.D. 253, 255 (D.Nev.1980) (aircraft manufacturer's investigations of crash discoverable); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 118 (N.D.Ga.1972) ("the obviously incongruous result of [this rule]

would be that the major part of the files of an insurance company would be insulated from discovery"); *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373 (N.D.Ill. 1972) ("under [this] theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of almost all internal documents of insurance companies relating to the claims of insureds").

**11.** I do agree with the result reached in today's opinion regarding the clear limitation placed on the scope of the attorney client privilege by Texas Rule of Civil Evidence 503.

ation of a new standard under which the trial court is to reconsider its decision. By modifying the tests set forth in *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38 (Tex.1989) and *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1987), the plurality has signalled that investigations of serious accidents (those resulting in serious injury or death) are presumptively privileged. Further, the procedure set out for overcoming this presumption invites needless confusion and delay. I share the concerns expressed in Part III of the concurring and dissenting opinion by Justice Doggett; in particular, I agree that the plurality opinion unfairly shifts the burden of proof to the plaintiff to establish a need for materials that are yet undiscovered. To this withdrawal from fair and open discovery, I dissent.

GAMMAGE, J., joins in this concurring and dissenting opinion.

NECHT, Justice, dissenting.

Although the Court agrees with relator and disagrees with the trial court on the law of investigative privilege, the Court denies relator relief. Characterizing today's decision as a modification of *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38 (Tex.1989), and a departure from *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1986), the Court concludes that the trial court could not have anticipated this change in the law and therefore cannot be said to have abused its discretion in disallowing relator's claim of privilege. For this reason the Court declines to grant mandamus, not because the trial court was right—indeed, all indications from the Court's analysis are that the trial court's decision was wrong—but because that court should have a chance to reconsider its ruling in light of today's opinion. I fully agree with the Court's discussion of privileges, but I do not regard anything the Court says today to conflict with the legal principles stated in *Flores* and *Stringer*. Although both opinions have been misconstrued and misapplied by some lower courts, neither is wrong in essence, as I believe today's decision demonstrates. Since I believe that our decision today an-

nounces no substantial change in the law we have announced previously, there is no reason not to grant mandamus. Therefore, I respectfully dissent from the judgment of the Court. In so doing, however, I emphasize that I do not differ with the Court on its view of the substantive law of privileges at issue here.

In *Flores* we stated:

Determining whether there is good cause to believe a suit will be filed, so that an investigation is done in anticipation of litigation, requires a two-prong analysis. The first prong requires an objective examination of the facts surrounding the investigation. Consideration should be given to outward manifestations which indicate litigation is imminent. The second prong utilizes a subjective approach. Did the party opposing discovery have a good faith belief that litigation would ensue? There cannot be good cause to believe a suit will be filed unless elements of both prongs are present. Looking at the totality of the circumstances surrounding the investigation, the trial court must then determine if the investigation was done in anticipation of litigation.

777 S.W.2d at 40–41. I agree with the Court that satisfaction of the first prong of this test *should not* require proof in every instance that litigation was imminent when an accident investigation was conducted. But *Flores does not* require such proof. It requires only that "[c]onsideration should be given" to the imminence of litigation, not that imminent litigation is the sole or even a controlling consideration in applying the first prong of the test. *Flores* clearly specifies that whether an investigation was done in anticipation of litigation must be determined from the totality of the circumstances, not from only one. On the facts presented in *Flores*, the Court concluded that the trial court's decision that a report had not been prepared in anticipation of litigation was not an abuse of discretion.

As the Court notes, several lower courts have misread *Flores* to require a showing of imminent litigation to satisfy its test. But the fact that an opinion can be misread

does not mean that it was wrong. The test set forth in *Flores* has not changed. An investigation is conducted in anticipation of litigation if the party has litigation in mind so that the prospect of litigation is at least part of the motivation for the investigation. This is the subjective element of the test, but it is not alone enough to establish a claim of privilege. A party's anticipation of litigation must be both real and reasonable. The latter requirement is the objective element of the test. It may be met by showing that litigation was imminent, but it may also be met, as the Court reminds today, by showing only that there was a substantial chance of litigation.

The occurrence of an accident does not, by itself, satisfy the objective prong of the test. Not all accidents result in litigation. As we said in *Stringer:* "The *mere* fact that an accident has occurred is not sufficient to clothe *all* post-accident investigations, which frequently uncover fresh evidence not obtainable through other sources, with a privilege." 720 S.W.2d at 802 (emphasis added). This statement, true on its face, was made in reaction to the court of appeals' unsupported conclusion, contrary to the trial court's, that the investigation in issue had been conducted when there was good cause to believe a suit would be filed. The following constitutes the entirety of the court of appeals' analysis:

> It is noted that while a claim or suit had not yet been filed at the time of the investigation, the privilege extends to investigations conducted when one has "good cause to believe" a suit will be filed. See *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977). We hold that Santa Fe had a valid right to invoke the protection of TEX.R.CIV.P. 166b 3d....

*Atchison, T. & S.F. Ry. v. Kirk*, 705 S.W.2d 829, 832 (Tex.App.–Eastland 1986, orig. proceeding). This Court's opinion in *Stringer* neither states nor implies that the occurrence of an accident is irrelevant in deciding whether litigation may ensue. Nor does *Stringer* hold that the circumstances of an accident can never indicate in themselves that litigation is likely to ensue, although some have misread *Stringer* to

say so. The circumstances of *Stringer*—a collision of two trains resulting in deaths and personal injuries—strongly suggest the likelihood of litigation, but the trial court in that case found that the investigation was not conducted in anticipation of litigation, and the court of appeals did not explain how that finding was an abuse of discretion. The Court disapproves *Stringer* "to the extent that it holds that the circumstances surrounding an accident can never by themselves be sufficient to trigger the privilege." *Ante* at 204. *Stringer* contains no such holding to any "extent". Again, we should not disapprove an opinion just because it can be misconstrued.

Today's decision is not inconsistent with *Flores* and *Stringer.* For the Court to criticize these two cases without any necessity is, in my view, completely unjustified. It is also dangerous. If we do not take seriously the rules set by our opinions, we can hardly expect others to do so.

Although I join substantively in Court's opinion, two additional points require emphasis. First, there is a danger that the Court's phrase, "a substantial chance of litigation", *ante* at 204, will be misconstrued as *Flores* and *Stringer* have been. By this phrase the Court does not mean a statistically significant probability that litigation will ensue. If this were the requirement, then it could rarely be met, since most accidents do not result in litigation. Nor does the phrase have meaning independent of the purpose of the privilege and the test to determine its application. Use of the phrase, "substantial chance of litigation", is but a shorthand reference to the underlying principle that for an investigation to be privileged it must have been conducted at a time when it would have appeared to a reasonable person, from the totality of all relevant circumstances, that litigation was more than merely an abstract possibility or unwarranted fear. This principle is in turn based upon a more fundamental one that a party's preparations for litigation ought ordinarily to be privileged from disclosure to his adversary. When these principles are satisfied, the ob-

jective prong of the test is met. Endless arguments about what is a "chance" and what is a "substantial chance" should not substitute for careful analysis of the controlling principles.

Second, I would point out that there is an exception to the investigation privilege in TEX.R.CIV.P. 166b(3)(c) that is largely ignored in the wrangling over what constitutes "in anticipation of litigation." That exception allows discovery of materials covered by the investigative privilege "[u]pon a showing that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means". This language taken from FED.R.CIV.P. 26(b)(3) has been the subject of considerable attention in the federal courts and in other jurisdictions, but has not been much applied in Texas since our adoption of it in 1988. Because the exception focuses more directly on the limits of the investigative privilege, it should prove more useful in resolving discovery disputes than arguments about whether litigation was anticipated. And the decisions of federal courts and the courts of other states should be helpful in applying the exception.

CORNYN, J., joins in this dissenting opinion.