## HENRY P. ROBERTS INVESTMENTS, INC., d/b/a Bicycle World of the Valley, Relator,

v.

## The Honorable George M. KELTON and The Honorable Darrell B. Hester, Acting and Presiding Judges for the 197th Judicial District Court of Cameron County, Texas, Respondents.

No. 13–94–307–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1994.

John Haywood, Law Offices of John Haywood, P.C., Brownsville, for real parties in interest.

Roger W. Hughes, Leo C. Salzman, Juan A. Gonzalez, Adams & Graham, Harlingen, for relator.

Before KENNEDY, DORSEY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

The present mandamus action concerns the exemption from discovery of a report prepared by an expert supposedly in anticipation of litigation. We deny mandamus relief.

Bicycle World of the Valley repaired Jack C. Armstrong's bicycle on October 18, 1993. The very next day, the bicycle's front tire blew out, and Armstrong fell and suffered a broken wrist. Armstrong promptly notified Bicycle World of the accident and began negotiations with State Farm Insurance Company, Bicycle World's liability insurance carrier. On November 18, 1993, Armstrong told State Farm that he wanted to settle the matter rather than hire an attorney.

In January 1994, State Farm asked Armstrong if an engineer, Maxwell Dow, could examine the bicycle. Armstrong contends that he agreed to allow the examination only on the condition that he receive a copy of the engineer's report. State Farm and its ex-

pert both deny having promised Armstrong a copy of the report. After the examination had been completed and the report prepared, State Farm refused to provide Armstrong with a copy of the report. Armstrong then filed suit against Bicycle World in April 1994.

Armstrong subsequently sought to depose Dow and requested production of the report. Bicycle World objects to the deposition and request for production and asserts that Dow is a "consulting expert" whose report is privileged from discovery because it was made in anticipation of litigation.

After a hearing on Armstrong's motion to compel discovery, the trial court found that Dow's investigation and report had been made at a time when Bicycle World should not have anticipated litigation and ordered Bicycle World to produce the report to Armstrong. Bicycle World asks us to order the trial court to vacate its order.

■■■ TEX.R.CIV.P. 166b(3)(b) generally protects from discovery the report of an expert retained solely for consultation if the report was developed in anticipation of litigation. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 555 (Tex.1990); *Green v. Lerner,* 786 S.W.2d 486, 489–91 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). To determine whether this privilege or various other similar privileges[1] apply, investigative documents are considered to have been prepared in "anticipation of litigation" if 1) a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue and 2) the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation. *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 207 (Tex.1993).

The privilege seeks to strike a balance between open discovery and the need to protect the adversary system so that a party may assemble information about the case free from undue interference from the other side. *Brotherton,* 851 S.W.2d at 203; *see also Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

■■■ "Substantial chance of litigation" means that litigation is more than merely an abstract possibility or unwarranted fear, but does not require that litigation be "imminent." Although the mere fact that an accident has occurred is not sufficient to clothe all post-accident investigations with a privilege, a reasonable person could conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance that litigation would ensue. Accordingly, common sense dictates that a party may reasonably anticipate suit being filed before the plaintiff actually manifests an intent to sue. *Brotherton,* 851 S.W.2d at 204 (modifying *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989), to the extent that the prior standard required outward manifestations indicating that litigation was imminent).

■■■ With regard to the subjective prong of the test, the court must also examine the totality of the circumstances to test the good faith beliefs and intentions of the party resisting discovery. Although the party need not be absolutely convinced that litigation will occur, the investigation must actually be conducted for the purpose of preparing for such litigation. *Id.* In order for the privilege to apply, preparation for litigation must be the primary motivating purpose underlying the investigation, even though nonlitigation factors may also be involved. *Id.*

With regard to investigations and reports by insurance companies, the *Brotherton* court cited with approval the Rhode Island case of *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84 (1978), as follows:

> In our litigious society, when an insured reports to his insurer that he has been involved in an accident involving another person, the insurer can reasonably anticipate that some action will be taken by the

---

[1]. *See* TEX.R.CIV.P. 166b(3)(a), (c), (d) (protecting work product, witness statements, and party communications, respectively).

other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case.... Although a claim may be settled short of the institution of legal action, there is an ever-present possibility of a claim's ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

*Brotherton,* 851 S.W.2d at 205–06 (citing *McAlpine,* 391 A.2d at 89–90). However, *Brotherton* cautions that not all claims investigations conducted by an insurance company are privileged:

An insurance company, like any other party, must establish that the circumstances reasonably indicated a substantial chance of litigation, that the insurer believed in good faith that litigation would ensue, and that the investigation was conducted primarily to prepare for the expected litigation. An insurer routinely investigating a claim to determine whether coverage exists under its policy will in many cases not be able to meet these criteria.

*Id.* at 206 n. 13.

■ To determine the privilege, it seems clear that "litigation" is strictly interpreted to mean the institution of a lawsuit in the courts and does not include other aspects of claims negotiation and settlement outside the context of the filing of a lawsuit. *See Flores,* 777 S.W.2d at 39–40. Accordingly, an insurer's anticipation that it may have to negotiate with a claimant over the payment of a claim does not itself trigger the privilege. *An investigation made primarily for the purpose of analyzing or strengthening the insurer's bargaining position in that negotiation is also not protected as having been made in anticipation of litigation.* Rather, before the insurer's investigations will be considered to have been made in "anticipation of litigation," there must be some reasonable basis to conclude that a lawsuit will be filed, and preparation for that lawsuit must have been the primary purpose for the investigation.

We are not unaware of the difficulty of distinguishing whether any given claims investigation is conducted primarily 1) for the purpose of settling the claim or 2) for litigation expected to result from a failure to settle. Whether settlement or litigation is more likely often depends upon the results of the investigation and the insurance company's own post-investigation determinations about the validity of the claim.

■ We assume that, until the insurer unequivocally denies the claim, it remains open to the possibility that it may pay the claim and that any investigation is performed, at least in part, on a desire to determine whether the claim should be paid. Accordingly, the investigation could be considered primarily conducted to prepare for litigation only when circumstances, other than the uncertainties of the investigation itself, make settlement before filing of suit unlikely, *i.e.,* when the insurer is already certain that, regardless of the findings, it will probably deny the claim and the claimant will file suit.

■ If the primary motivating factor of the investigation is to determine whether the claim should be paid or settled and the potential lawsuit avoided, then it would not appear to meet the test set forth in *Brotherton.* On the other hand, if the insurance company has already determined that it will not settle the claim and seeks further investigation primarily for the purpose of preparing its case for the anticipated lawsuit, its investigation should be considered to have been undertaken in anticipation of litigation. When the insurer later seeks to shield its investigation from discovery as having been prepared in anticipation of litigation, we would expect it to detail and justify its emphasis on litigation rather than claim settlement as the primary purpose of the investigation.

■ In the present case, the evidence is undisputed that there was a substantial, unresolved claim concerning Bicycle World's and State Farm's liability for Armstrong's injuries and that Armstrong had told State Farm that he wanted to settle the claim rather than hire an attorney. Accordingly, it seems apparent that, by telling State Farm that he wanted to settle the claim rather than hire an attorney, Armstrong manifested

an intent to sue Bicycle World if his claim was not settled and, thus, provided an objective basis for Bicycle World and State Farm to anticipate litigation should State Farm fail to settle the claim.

We now review the evidence with regard to the subjective prong of the test. In support of its motion for protective order, State Farm submitted the affidavit of its claims adjuster, Juan Ramirez. Ramirez's affidavit states as follows:

> On November 18, 1993, Mr. Armstrong indicated to me that he wanted to settle this matter without having to hire an attorney. At that time, it was my belief concerning the totality of the circumstances surrounding the investigation and the representations made to me by Mr. Armstrong that there was a substantial chance of litigation. The injured [sic] was contesting liability and did not feel he was to blame. At the time I knew he had an injury which would require extensive medical expenses. When Mr. Armstrong told me that he wanted to settle without having to hire an attorney, I took that to mean that if we did not meet all of his demands for monetary compensation, no matter how extreme, that he would hire an attorney and that litigation would ensue.
>
> Based upon the totality of all the circumstances as of November 18, 1993, I believed that it was more likely than not that litigation was going to ensue.
>
> Thereafter, on or about January 25, 1994, I made arrangements to have Maxwell Dow, an engineer with AID Consulting Engineers, Inc., provide consultation services in connection with our anticipation of litigation and solely for consultation purposes. The scope of Mr. Dow's engagement was to examine the bicycle in question and the component parts and to provide a report to us and to [Bicycle World's] attorneys. At no time was Mr. Dow authorized to provide any opinions, impressions or reports to anyone not associated with [Bicycle World], its attorneys or its insurer.

In addition, attached as Exhibit 1 to the affidavit is a copy of a letter Ramirez sent to Armstrong, dated February 18, 1994, stating that State Farm had Dow's report but was still waiting for medical bills and records, and that "[o]nce these are received, we will be to able [sic] properly evaluate your claim." The letter continued, "[t]hen we will be able to discuss the settlement of this case with you."

Maxwell Dow's affidavit merely states that he "was engaged to examine a bicycle and its component parts that was allegedly involved in an accident wherein Mr. Armstrong was injured." The affidavit also states, "I was to examine the items and to provide mental impressions and opinions to Mr. Juan Ramirez, an adjuster with the insurer of [Bicycle World]."

We find sufficient evidence in these affidavits from which the trial court could conclude that Bicycle World did not meet the subjective prong of the test and that litigation was not the primary purpose of the investigation in question. Although Ramirez states that he believed litigation to be more likely than not and that this was at least one reason for Dow's investigation, he did not state, unequivocally, that litigation was the primary purpose for the investigation. In fact, Ramirez's letter to Armstrong would indicate that claims evaluation and settlement was the primary purpose of the investigation. Moreover, Bicycle World's evidence does not show that State Farm had already determined that it would deny the claim, regardless of what the report might show. Although Ramirez speculates about excessive demands, he does not indicate that Armstrong in fact made any such demands that could not be considered by State Farm.

We hold that the trial court did not abuse its discretion in determining that the report was not prepared in anticipation of litigation. We further hold that the trial court did not abuse its discretion by ordering that Bicycle World produce the report to Armstrong.

We deny mandamus relief.