NATIONAL CONVERTING & FULFILLMENT CORPORATION, National Packaging Corporation, C & S Litho, Inc., Specialty Container Corporation, and Process Graphic Services. a/k/a Process Engraving Co., Inc., Plaintiffs,

v.

BANKERS TRUST CORP. f/k/a Bankers Trust New York Corp., et al., Defendants.

No. CIV.A.3:99CV0101–R.

United States District Court, N.D. Texas, Dallas Division.

March 20, 2001.

Bruce W Bowman, Jr, John P Kincade, Winstead Sechrest & Minick, Dallas, TX, Frederick W Reynolds, Gardere Wynne Sewell, Dallas, TX, for plaintiffs.

Michael Lowenberg, David Fred Staber, G Michael Curran, Diane Pearlstone Couchman, Akin Gump Strauss Hauer & Feld, Dallas, TX, for Bankers Trust Corp., defendant.

John E. Leslie, Law Office of John E. Leslie, Dallas, TX, for Gary Ullman, defendant.

John L. Estes, Locke Liddell & Sapp, Dallas, TX, pro se.

Diane Pearlstone Couchman, Akin Gump Strauss Hauer & Feld, Dallas, TX, for Joe Wood, Jamie Dworkin, movants.

Sharla H Myers, Kyle & Mathis, Dallas, TX, pro se.

### MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Before the Court is **Defendants' Joint Objection to Magistrate's Order of December 21, 2000, Regarding Defendants' Joint Motion to Compel Answers to Questions at Randall Riecke's Deposition and Production of Documents** (the "Objection"), filed January 8, 2001. For the reasons stated below, the Court finds that the Order entered on December 21, 2000 by United States Magistrate Judge William Sanderson was properly decided.

Accordingly, the Defendants' Objection is **DENIED**.

## I. BACKGROUND FACTS

This case, which was removed to federal court by the Defendants on January 15, 1999, involves claims by the Plaintiffs that the Defendants committed fraud, fraudulent inducement, negligent misrepresentation and breach of contract. The discovery phase of this action has apparently been extremely litigious. The issue currently before the Court began on June 28, 2000 when the Defendants took the deposition of Randall Riecke ("Randall").

Randall is the son of Melvin Riecke ("Melvin"), the owner of two of the plaintiff corporations, National Converting & Fulfillment Corporation and National Packaging Corporation. Randall is licensed to practice law in the state of Texas, although he has never worked as an attorney. Instead, he works mostly as a CPA, and has acted as a business advisor and provided accounting services to both of Melvin's companies. Occasionally, Melvin asked Randall to discuss legal issues with the companies' counsel, Bill Smith. In Randall's own words:

> My father would ask me to discuss a particular matter involving a legal issue with Bill Smith.... I would be given a task to complete ... to discuss a legal issue with my father and he would then ask me to convey that issue to Bill Smith and discuss our conversation and get his input or guidance.

(Depo. of R. Riecke, 18:9–10, 18–22).

On August 24, 2000, the Defendants filed their Joint Motion to Compel Answers to Questions Propounded at Randall Riecke's Deposition and Production of Documents. Magistrate Judge Sanderson held a hearing on the motion on December 7, 2000, as well as an *in camera* inspection of documents cited as privileged by the Plaintiffs. In his Order (filed December 20, 2000),

Magistrate Judge Sanderson held that to the extent that Melvin "used Randall as a representative to seek legal advice from counsel or to receive legal advice from the attorney, ... such communications which were conveyed through Randall are protected by Texas Rule of Evidence 503(a)(2)(A)." Order at 2–3. Further, based on his *in camera* inspection of documents, Magistrate Judge Sanderson held several documents to contain information protected by the attorney-client privilege that the Plaintiffs were entitled to assert with regard to Randall. Order at 3–4.

## II. ANALYSIS

The issue before the Court is one of first impression. The Court must decide whether a person who is not an employee of a corporation, but who is the close relative of the owner of such corporation and who is given substantial authority to speak on behalf of the corporation, may be considered the "representative of the client" under Texas Rule of Evidence 503(a)(2).

> Texas Rule of Evidence 503(a)(2) defines a "representative of the client" as: (A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or (B) any person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client.

Tex. Rules of Evid. 503(a) (Vernon's 2000).

█ The language of Rule 503(a)(2)(A) represents the "control group" test, which courts have traditionally interpreted to mean that privilege may be asserted by a corporation for "statements made by employees 'in a position to control or even take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney.'" *Na-*

*tional Tank Co. v. Brotherton,* 851 S.W.2d 193, 197 (Tex.1993) (citations omitted).

In *National Tank,* the Supreme Court of Texas explained that Texas had expressly adopted the control group test as the relevant rule. In that case, several employees of the defendant corporation, NATCO, made statements to NATCO's legal department and an investigator for NATCO's insurance company regarding an explosion at the company's facility. The court held that the statements were not privileged. *National Tank,* 851 S.W.2d at 199. The court reasoned that the "control group test reflects the distinction between the corporate entity and the individual employee and is based on the premise that only an employee who controls the actions of the corporation can personify the corporation." *Id.* at 197. NATCO argued that the employees were representatives of the corporation because they spoke with the "blessing" of management. *Id.* at 198. However, the court explained that the hurdle NATCO still could not overcome was the fact that the employees who witnessed the explosion and later gave statements were not in any way able to *control* the actions of the corporation. *Id.* Because they were not "authorized to seek legal counsel on behalf of the corporation," the statements made by the NATCO employee witnesses were not protected by the attorney-client privilege. *Id.* at 198–99.

Typically, the control group test is discussed with regard to employees of the corporation. This is because generally those who have "authority to obtain professional legal services, or to act on advice thereby rendered" are upper-echelon employees of the corporation. However, the language of the Texas Rule of Evidence 503(a)(2)(A) does not on its face require that the representative of the client be an employee, unlike 503(a)(2)(B), which requires the person to be acting "within the scope of employment." [1]

While *National Tank* may be read to require that the representative of the client be an employee, the case must be read in light of the fact that the court was dealing with a situation where *employees* had made the allegedly privileged statements. Thus, the language of the opinion naturally was couched in terms of what type of *employee* fell within the scope of the control group test.

■ Alternatively, in the present case this Court is presented with a situation where a non-employee, Randall, has exactly the type of authority that control group employees have. That is, Melvin granted authority to Randall to discuss the legal issues facing the two companies owned by Melvin with the companies' counsel. Further, Randall had the ability to shape the course of action that companies would take. Finally, Randall was entrusted with communicating the issues he discussed with the companies' counsel back to Melvin. Hence, the Court agrees with Magis-

---

1. Rule 503(a)(2)(B) was added in 1998 and represents the "subject matter" test, in which statements made by lower level employees acting within the scope of their employment may be treated as privileged. The adoption of the subject matter test by Texas represents an alignment with the reasoning of the United States Supreme Court in *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584, in which the Court held that the control group test acted to frustrate "the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice..." *Id.* at 392, 101 S.Ct. 677.

The Supreme Court in *Upjohn* also explained that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the *giving of information to the lawyer* to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. 677 (emphasis added).

trate Judge Sanderson's holding that there is:

> ... nothing inappropriate in the owner's delegation of responsibility to his son—notwithstanding the son is not an employee of either Plaintiff—to seek and to obtain legal advice relating to the business operations of the Plaintiffs. Therefore, to the extent Mel Riecke used Randall as a representative to seek legal advice from counsel or to receive legal advice from the attorney, I find that such communications which were conveyed through Randall are protected by Texas Rule of Evidence 503(a)(2)(A).

## III.  CONCLUSION

For the foregoing reasons, the Defendants' Objection is **DENIED.**

**It is so ORDERED.**